CASE 91.—ACTION BY H. E. BURGESS AGAINST GEORGE I.
COX FOR SPECIFIC PERFORMANCE OF A CON-
TRACT FOR THE SALE OF LAND.—October 14, 1906

## Cox v. Burgess.

Appeal from Pike Circuit Court.

Judgment for plaintiff and defendant appeals.—
Affirmed.

1. Specific Performance—Land Contract—Fairness—Value of
Land.—Defendant owned certain timber land farther up a
branch between two mountains and on each side of complain-
ant's land. The only practicable route for the hauling of tim-
ber from defendant's land, which was supposed to be valua-
ble only for the timber thereon, was over complainant's land,
and in order to obtain this defendant contracted to sell all
his land and the timber remaining thereon at the expiration
of four years to complainant at 50 cents per acre, in consid-
eration for which complainant granted a right of way over
his land for the hauling of logs. After the contract was exe-
cuted the land became more valuable because of the develop-
ment of mineral resources in the region and the extension of
a railway. Held, that the contract was not so unfair and un-
conscionable that equity would deny specific performance.

2. Vendor and Purchaser—Contract to Convey—Construction—
Description.—A bond to convey land described it as all land
owned by defendant, lying on the waters of Long Fork of Mil-
lers Creek in P. county, Ky., "which lies back of the land" of
complainant. Held, that such description would be construed
to include all the land owned by defendant on the waters and
beneath the watershed of such branch or stream which lay
back of and beyond the lines of complainant's land on the
same branch.

J. M. YORK for appellant.

J. S. CLINE for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirm-
ing.

Appellee owned the land across and on both sides the mouth of Long Fork of Millers Creek in Pike county, extending from the side of the mountain on the side of the branch, to the side of the mountain on the other side of the branch. Appellant owned a larger boundary, about 1,000 acres, adjoining appellee's, but lying further up the branch, and on each side of appellee's land. The situation was such that to haul out of appellant's land it was necessary to cross appellee's farm, or to cross the mountains. The latter was impracticable, so that the route over appellee's land was the only one out for heavy hauling. Appellee lived on his land and had it enclosed and in cultivation. The valley was narrow, affording a few small lots of bottom land which were either in fruit orchards, barn lots, or corn lots. Appellant's land was timber land, and unenclosed. Desiring to sell and remove the merchantable timber from it he, by his agent Means, approached appellee to procure a right of way out over appellee's land for transporting the saw logs when cut. The negotiations resulted in a contract between appellee and Means by which Means was to have the right of way over appellee's land for four years, and then was to sell, and did thereby purport to sell to appellee all the land "back of his land on the Long Fork of Millers Creek" at fifty cents an acre reserving the oil. All timber not removed at the expiration of the four years was to pass with the land to appellee. This agreement embraces about 88 acres of land. Appellee contends that Means represented that he owned the Cox land, or an undivided interest in it. This Means denies. But the writing which he executed to appellee purports an ownership in Means. Means and Cox at once began cutting their trees into saw

logs. Appellee learning that Means did not own the Cox land or any interest in it refused to allow the use of the passway unless Cox would sign the contract. Cox agreed to this, and executed with appellee the following agreement:

"This contract made and entered into by and between George. L. Cox and H. E. Burgess, witnesseth:

"That the said Cox does hereby agree to make to the said Burgess a warranty deed for all the land owned by him which lies back of the land of said Burgess, on Long Fork of Millers Creek, in the county of Pike and State of Kentucky, said deed to be made four (4) years from this date, in consideration of the sum of fifty (50) cents per acre for said land, when the deed is made, the said Cox reserving the oil right and the privilege of taking off any timber on said land, which he wishes to do so, before the expiration of said four years. In consideration thereof the said Burgess hereby grants to the said Cox the right of way over his land for the purpose of removing said timber, said right of way to be used so as not to injure growing crops.

"Signed in duplicate, this 10th day of November, 1900.

"GEO. L. Cox,
"H. E. BURGESS."

Whereupon appellee opened up the passway for Cox and his employes in removing the timber and kept it open for them for the full period provided in the contract—four years. Appellant Cox refused to convey the land at 50 cents an acre at the expiration of the four years, and this suit was brought against him by appellee to compel the specific performance of the contract. Appellant defended on two grounds. One, that the contract was unfair and unconscion-

able; that the land was worth when the suit was brought, $20 an acre, and was worth $10 when the contract was made; that appellee realizing the fix in which appellant was placed with reference to his timber took advantage of him and squeezed him into a bargain that is distortionate. He claims therefore that he executed the contract under duress. The other defense is that appellee did not furnish the passway he had agreed, but refused to allow its free use for the full term for the purposes of removing appellant's timber by reason of which part of the timber was not taken off.

The proof discloses that when the contract was entered into appellant's land was regarded by him and others generally valuable mainly for its timber, and was worth then from $1 to $3 an acre with the timber all on it. But since then development of mineral resources of that region has added a considerable market value to such lands, and by reason of the extension of a railroad up the Big Sandy Valley to the vicinity of this land within the last year or two (but not undertaken when the contract was made) has added a great deal to the value of these and all other lands in that immediate locality.

Appellant, finding that his land has greatly appreciated in value since his contract was made, or that he was then mistaken as to its real or probable value, so that to now comply with it would be to give greatly more for the right of way he has had and used, than it is or was worth, insists that to compel his specific performance of the contract would be unconscionable; that it would be to compel him to pay from $800 to $2,000 for that which was worth not over $40 or $50. Appellant relies on that principle of equity which refuses to decree the specific execu-

tion of a contract which is attended with hardship, oppression or fraud. This principle is admitted. Whether it applies to the case presented is the question.

While equity operates on fixed rules, as well defined as are the rules of law, it exercises a judicial discretion which may be likened to the civil conscience, and which will vary in the relief afforded according to the peculiar facts and circumstances of the particular case. This is not, as was formerly charged against the chancellor's exercise of prerogative which were at variance with the rules of law, according to the individual conception of the judge in the case as to what was right between man and man. Or, as it was anciently put (Table Talk, tit. equity) :

"Equity is a roguish thing. For law we have a measure and know what we trust to. Equity is according to the conscience of him that is chancellor; and as that is larger or narrower, so is equity. 'Tis all one as if they should make his foot the standard for the measure we call a chancellor's foot. What an uncertain measure would this be? One chancellor has a long foot, another a short foot, a third an indifferent foot. 'Tis the same thing as the chancellor's conscience."

Equity is now also the law. The case must fit itself to the law of equity. Equity will not change itself to fit the facts of the case. So, while the rule is that equity will withhold its sanction from and refuse to execute a contract which is founded upon fraud, imposition, mistake, undue advantage, or gross misapprehension; or where, from a change of circumstances or otherwise, it would be unconscientious to enforce it (2 Story's Equity, section 750a),

yet those broad terms have each been defined by the courts until they also have come to have a fixed legal meaning in their application by courts of equity. It was never intended to substitute the judgment or business sagacity of the chancellor for that of the contracting party, and to relieve one of his bad bargain although fairly entered into. Nor was it intended to deprive one party of the gain which had accrued to him by the changing circumstances of the future which his foresight anticipated or which fortune had thrown in his way. No more was it intended that the chancellor should act as guardian for him who overestimates to himself the value of a dollar at present as compared to several dollars in the indefinite future, relieving such of the consequences of their errors of judgment, or sheltering them behind the chancellor's grace from the performance of what they have in a fair trade been paid to do.

Even though the consideration had been inadequate—if we had a way of truly measuring the consideration—that of itself is not enough to justify the chancellor's refusal to enforce the contract. Pomeroy states the rule correctly thus (Pomeroy's Equity Jurisprudence, 926):

"The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject-matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject-

matter, courts of equity should not and will not, interfere with such valuation.''

Gross inadequacy of consideration is a ground for withholding the relief. But it must be such after all as amounts in law to a fraud. It must be as Lord Thurlow puts it in Gwynne v. Heaton, 1 Bro. Ch. 1, 9:

''An inequality so strong, gross and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it.''

The contract should be viewed as of the time and under the circumstances when it was made. For the law is clear that increases, gains, rises in value and other advantages happening to the property after the contract is entered into belong to the purchaser, who also assumes the risks of depreciation in value, losses from fire and the other elements, or other accidental causes not resulting from the fault of the seller. (Pom. Eq. Jur., section 1406.)

If the timber was the main value of this land in 1900, and to get it out to market was therefore a valuable privilege to its owner, a convenient, cheaply operated right of way for hauling off his logs may fairly be regarded as a matter of considerable value to him, as he had no other. What he got for his logs is not shown. What the trees were then worth as they stood in the forest with no outlet to floatable water, is not shown. It may be for ought the record discloses, that the right of way was a very valuable property to appellant. He had its use for four years, and got out all or nearly all the timber, and could with proper diligence have got it all out to market. Shall he now measure the value of that consideration which he got from appellee, by proof of the inconvenience or damage it did appellee? Surely not.

Nor is there any feature of oppression in the transaction. Appellant was not bound to then sell or take out his timber. Appellee was under no sort of obligation, natural, moral, or otherwise, to facilitate appellant's timber operations, no more than were the sawmill owners to buy his timber after he got it to market. Appellant was not unadvised of his rights; he was not imposed on by misrepresentation or deceit of appellee; he was not put in bodily fear; his mind was not overreached by appellee; he acted upon his own judgment, and was perfectly free and independent in the matter. He got what he bargained for. That subsequent events show that the bargain was not a good one for him does not alter the law which upholds every contract understandingly entered into by competent parties for a valuable consideration and not illegal or immoral. There is no element of oppression in the case.

The claim that appellee did not furnish the passway is not sustained by the evidence.

Objection is also made to the description of the land in the bond. We think it sufficient. It designates it as all the land owned by appellant lying on the waters of Long Fork of Millers Creek in Pike county, Ky., "which lies back of the land of said Burgess." That should be construed to mean, as the lower court did construe it, all the land owned by Geo. T. Cox on the waters, and beneath the water shed, of that branch or stream, which lay back of, that is, beyond the lines of H. E. Burgess on that same branch. It could have no other meaning, and the parties themselves seem to have so understood it.

The judgment of the chancellor enforcing the specific performance of the contract is affirmed.