### Berry v. Berry, et. al.

(Decided March 4, 1919.)

### Appeal from Daviess Circuit Court.

1. Compromise and Settlement—Fraud.—In an action on a compromise agreement, evidence examined and held insufficient to show that the agreement was obtained by fraud.

2. Compromise and Settlement—Fraudulent Concealment of Facts—Mistake of Law and Fact—Evidence.—Where a son's claim against his mother's estate, for services rendered in managing her farm, was compromised by the heirs, the failure of the son to disclose a settlement agreement between him and his mother was not a fraudulent concealment of facts, which would of itself avoid the compromise or furnish a basis for the contention that the compromise was made under a mistake of law or fact, where the settlement showed on its face that it related to other matters and

did not include the son's claim for services, and was therefore immaterial.

3. Compromise and Settlement—Requisites.—Where there is a question between the parties about which reasonable men may differ as to the outcome, the parties may adjust the difference between themselves by way of compromise, which will be upheld though it subsequently develops that one of the parties was right and the other wrong.

4. Compromise and Settlement—Requisites—Evidence.—In an action to enforce a compromise of a son's claim against his mother's estate, for services rendered in managing her farm, executed by the son and the other heirs, held, that the fact that the services were performed, coupled with the fact that the mother proposed a settlement and carried the settlement into effect by devising to him a greater portion of the estate than he would otherwise have received, was sufficient to show that his claim was one about which reasonable men might differ, and to support the compromise.

W. P. SANDIDGE and R. W. SLACK for appellant.

BEN D. RINGO and LaVEGA CLEMENTS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Sallie A. Berry lived on a farm just west of the city of Owensboro. Her husband died in the year 1877, and left surviving him seven children, John H. Berry, Henry S. Berry, Edward C. Berry, George B. Berry, Lide Berry, Rowena Berry and Nannie Berry.

Lide died before reaching her majority.

John H. Berry worked on the farm for a while and then moved out west. The other children, with the exception of Henry, lived on the farm for some time and then settled in the neighborhood. Henry became twenty-one in the year 1884, and managed the farm for his mother until June, 1901. During that time he managed the farm very profitably and helped to bring up and educate the other children. The proceeds from the farm were deposited to the credit of his mother, and he received nothing for his services except his board and clothes. In the year 1901 his mother approached him and asked him what he wanted for his services. He said to her, "Mother, you think more of Ed than any of the children. You and Ed agree upon my services and I will accept it." On the same day, his mother and Ed consulted about the matter and stated to him that his mother had made a will giving him his sister Lide's share of the estate as compensa-

tion for his seventeen years of work. On the same day, his mother made a will carrying out this agreement. During the same year, Henry made a contract with his mother by which he was to occupy the farm with her and pay her $1,000.00 a year and her support. This arrangement was continued until his mother's death. Shortly before her death he made a settlement with her covering the period from January 1, 1902, until January 1, 1913. During this time, Henry paid out for his mother, for own use and as advancements from her to some of the children, more than $16,000.00. Charging himself with the rent during this period and the personal property on the farm when he took charge, there was left due him the sum of $3,063.98. His claim for this amount was subsequently filed in this action and allowed. His mother died in the year 1914. Shortly before her death, she revoked the will made in the year 1901, giving to Henry his sister Lide's part of the estate, and made a new will leaving out this provision and devising the property to all her children. By this last will, which was duly probated, Edward C. Berry and Henry S. Berry were appointed executors and duly qualified. Shortly thereafter, Henry S. Berry tendered his resignation, which was duly accepted by the Daviess county court.

This suit was brought by Edward C. Berry, as executor, and in his own right, and Nannie Berry and George B. Berry against John H. Berry, Henry S. Berry and the other children for a settlement of the estate. After the will was probated, Henry S. Berry made out a claim against his mother's estate for $10,000.00 for services rendered by him in the management of the farm from 1884 until 1901. The first discussion of this claim took place in the presence of all the children, and John and the others insisted that they would stand by the will. After that, overtures for compromise were made and after considerable discussion a written agreement was executed, by which John H. Berry agreed to pay the sum of $700.00, Nannie Berry the sum of $1,300.00, George B. Berry the sum of $1,333.33 and Edward C. Berry the sum of $1,333.33, in settlement of Henry's claim against his mother's estate. It was further agreed that these sums should be paid by the executor out of the estate. In his answer to the settlement suit Henry S. Berry pleaded the foregoing agreement, and asked judgment against his brothers and sisters for the foregoing amounts, and that

the executor be required to pay the amounts out of the estate. Nannie Berry and Edward Berry made no defense, but John H. Berry and George B. Berry filed replies, pleading in substance that the compromise agreement was obtained by fraud; that it was executed under a mistake of law and fact and was without consideration. Several depositions were taken and on final hearing the chancellor rendered judgment in favor of John and George on the sole ground that Henry had no legal claim against his mother's estate. Henry appeals.

The contention that the compromise agreement was obtained by fraud is based on the claim that Edward Berry and Nannie Berry represented Henry Berry, and Nannie Berry stated to appellees that she had consulted lawyers out west, who had told her that Henry's claim was valid, and that they were influenced by her representations, as well as the representations of Edward Berry, to make the compromise. There is absolutely no ground for the conclusion that either Ed Berry or Nannie Berry represented Henry Berry, As a matter of fact, their interests were antagonistic to those of Henry. All that the testimony shows is that after a full discussion of the matter, they recognized the justice of Henry's claim and preferred to compromise it rather than to subject themselves and their brothers and sisters to the annoyance and notoriety of a family suit, and therefore recommended the compromise.

The mistake of law and fact, on which the appellees relied, is that the claim of Henry for the services in question was concluded by the settlement made with his mother on March 6, 1913, and this settlement was fraudulently concealed from them, and that if they had known of it they would not have signed the compromise agreement. It is true that the settlement contains the following language: "This is a final settlement between Henry Berry and Sallie A. Berry," but it shows upon its face that it relates solely to matters growing out of the operation of the farm after Henry took charge thereof, and agreed to pay his mother $1,000.00 a year, and was not intended as a settlement of Henry's claim for services rendered while he managed the farm for his mother. That being true, it was immaterial whether appellees had knowledge of this settlement. Under the circumstances, Henry was not bound to disclose it, and his failure to do so was not a fraudulent concealment of facts, which

would of itself avoid the compromise or furnish a basis for the contention that the compromise was made under a mistake of law or fact.

The chancellor seems to have proceeded upon the theory that if, as a matter of fact, Henry's claim against his mother's estate was not well founded in law, it could not be the subject of a valid compromise. He then proceeded to consider the claim on its merits, and being of the opinion that it was not well founded, he held John and George not bound by the compromise agreement. In reaching this conclusion, he held that the relationship of the parties was sufficient to raise the presumption that they lived together as a matter of mutual convenience, and that under these circumstances the law did not imply a promise to pay for the services rendered by Henry, but that it was necessary to show an express contract which the evidence failed to do. It is not necessary to sustain the compromise of a doubtful right, that the parties shall have settled the controversy as the law would have done. It is immaterial upon which side the right ultimately proves to be, and the compromise may be sustained, although it afterwards develops that the right is on the other side. Nor will the courts inquire as to which party had the better right, for, as held by many decisions, to require a party to establish his original right would in effect destroy all compromises and render such contracts useless. 12 C. J. 327; Mill's Heirs v. Lee, 6 T. B. Monroe 91, 17 Am. Dec. 118. Hence, the rule is, that if there be a question between parties, about which reasonable men might well differ as to the outcome, the parties themselves may adjust it by way of compromise, and the agreement will be upheld by the courts. Western & Southern Life Insurance Co. v. Quinn, 130 Ky. 397, 113 S. W. 456. Without entering into a review of all the evidence, we think the fact that the services were performed, coupled with the fact that the mother proposed a settlement and carried the settlement into effect by devising to him a greater portion of the estate than he would otherwise have received, was sufficient to make his claim one about which reasonable men might differ. That being true, and it further appearing that the agreement was free from fraud or deception, and was entered into in good faith, it follows that the agreement should be upheld.

Judgment reversed and cause remanded with directions to enter judgment in accordance with this opinion.