## Davenport v. Anderson, et al.

(Decided October 8, 1926.)

### Appeal from Warren Circuit Court.

1. Mines and Minerals—Strict Performance of Contract in Matter of Making Payment Held Waived, and Hence Agreement to Accept Tardy Payment, Providing Additional Payment was Made, was Without Consideraiton.—Statement by one entitled to payment on oil lease in one hour that "he would not be contentious about few hours' delay" held waiver of strict performance, and hence his agreement to accept payment two days later, providing additional payment be made, was without consideration.

2. Compromise and Settlement.—That seller of oil lease, agreeing to accept payment thereon two days after due, in good faith believed he had a right to forfeit contract, held not alone sufficient to show compromise agreement supported by valid consideration.

3. Compromise and Settlement.—Good faith in assertion of claim is not alone sufficient consideration to support a compromise settlement.

THOMAS, THOMAS & LOGAN for appellant.

RODES & HARLIN for appellees.

Opinion of the Court by Judge Dietzman—Affirming.

On the 15th day of June, 1922, the appellant, C. G. Davenport, entered into an escrow agreement with the appellees, E. C. Anderson and T. C. Fuller, relative to the sale of an oil and gas lease known in this record as the Martin lease. Davenport executed an assignment of this lease he then owned, but left the name of the assignee in blank. This assignment, together with the escrow agreement, was deposited with the Citizens' National Bank of Bowling Green. The escrow agreement, among other things, provided that Davenport sold and assigned the Martin lease to Anderson and Fuller for the sum of $12,000.00, of which $1,000.00 was cash in hand paid; $1,000.00 was to be paid on or before 12 o'clock noon of July 1, 1922; $3,500.00 on or before 12 o'clock noon of August 1, 1922; $3,500.00 on or before 12 o'clock noon of September 1, 1922; and $3,000.00 on or before 12 o'clock noon of October 1, 1922. All of these payments were to be made to the escrow agent. The escrow agreement further provided that Anderson and Fuller should commence, within fifteen days from the date of the agree-

ment, the drilling of a well on the Martin lease and complete the same with diligence and dispatch. Finally it was stipulated in the escrow agreement that should Anderson and Fuller fail to commence the well and prosecute its drilling with diligence and dispatch, as provided for, or should Anderson and Fuller fail to make any of the payments set out within the time named, then Davenport had the right to treat the contract as null and void, and had the right to retain any sums theretofore paid as liquidated damages; but, should Anderson and Fuller comply in all respects with the contract, then on final payment the escrow agent was to turn over the title papers to them. Anderson and Fuller promptly paid the first $1,000.00 called for, also the second $1,000.00 which had to be paid on July 1st. They likewise promptly and within time began the digging of a well and completed it with diligence and dispatch and before August first at cost to them of some $10,000.00 or $12,000.00. It was a producing well. On the morning of August 1, 1922, Anderson received telegraphic notice from his associate, Fuller, who was then in Washington, D. C., that the $3,500.00 due that day as payment under the escrow agreement had been deposited with the Continental Trust Company of Washington, D. C., for immediate transmission to the Citizens' National Bank of Bowling Green to be by it credited to Anderson. Anderson went to the Citizens' National Bank somewhere between 10 and 11 o'clock on that day and ascertained that it had not yet received any notice of this deposit. He left the bank and about 11 o'clock met Mr. Davenport on the street. He informed Davenport of the situation, and he testifies that Davenport replied that "he would not be contentious over a few hours' delay." Davenport does not deny making this statement but contents himself with testifying: "I don't recall" whether this conversation took place or not. We are of opinion that this conversation as related by Anderson did take place. That afternoon the Citizens' National Bank received a telegram which the Continental Trust Company had posted in Washington at 2:45 p. m. that day, to the effect that the trust company had remitted to the National Park Bank of New York $3,500.00 for credit to E. C. Anderson on the books of the Bowling Green Bank. The Bowling Green Bank took no further action that day but on the following day wired to the National Park Bank of New

York City inquiring whether or not the Continental Trust Company had remitted to it the $3,500.00 mentioned in the telegram of the previous day from the trust company. The New York Bank on August 3rd in a telegram to the Bowling Green Bank confirmed the fact of the transfer. In the meantime, and early on the morning of August 2nd, Anderson was served by a deputy sheriff of Warren county with a notice from Davenport to the effect that for the failure on Anderson's and Fuller's part to pay the $3,500.00 due at noon on August 1st he had elected, in accordance with the terms of the escrow agreement, to declare a forfeiture thereof. Anderson testifies that on receipt of this notice he was in a great quandary as to just what to do; that he got in touch with his associate Fuller in Washington and the latter advised him to go see Davenport and straighten the matter out with him, as Davenport was a reasonable man and would act reasonably. Thereupon Anderson did go to see Davenport on August 3rd and as a result of that interview Davenport and Anderson entered into a supplemental escrow agreement which was signed by Davenport, by Anderson, and also by Fuller by Anderson as his agent. In substance the supplemental agreement provided that in consideration of the payment of the $3,500.00 which was due on August 1, 1922, and the faithful performance of all the stipulations in the original escrow agreement and the further payment of an additional sum of $3,250.00 on December 1, 1922, Davenport renewed the original escrow agreement as modified by the supplemental escrow agreement. Thereupon the $3,500.00 called for on August 1st was paid, and all the covenants and stipulations to be performed by Anderson and Fuller as set out in the original escrow agreement were thereafter faithfully and punctually performed. However, the $3,250.00 additional compensation provided for by the supplemental escrow agreement, and which was to be paid on December 1, 1922, was not paid and thereupon Davenport brought this suit against Anderson and Fuller for that sum and asked that he be adjudged a lien on the Martin lease to secure him in the payment of the same. Thereafter the appellee, Fuller Oil Corporation, filed its intervening petition which it asked to be taken as its answer and counterclaim, and the substance of which was that Anderson and Fuller in purchasing this lease did so for the benefit of the Fuller Oil Corporation; that Ander-

son and Fuller had transferred to it any rights they had to said lease and that it was the real party in interest; that the supplemental agreement on which Davenport relied in this suit was void because executed without authority and without consideration passing to Anderson or Fuller or it; but that by reason of this controversy the escrow agent refused to hand over to it the title papers. It asked that its title to the lease be quieted and that the escrow agent be compelled to surrender to it the title papers to the Martin lease. Fuller also filed answer in which he said that all payments due Davenport for the assignment of the lease had been paid. Anderson did not file any answer. The pleadings of the defendants were duly controverted of record, and the court, after hearing proof, dismissed Davenport's petition and quieted the title of the Fuller Oil Corporation to the lease. Davenport is appealing.

Appellees insist that the judgment of the lower court is correct because it was shown that Anderson had no authority to execute the supplemental escrow agreement, and further that there was no consideration given by Davenport for the promise of the additional $3,250.00 to be paid on December 1st. Without going into the first of the two contentions, we find that on the morning of August 1st, and before the actual hour of the payment called for on that day, Anderson met Davenport on the street and informed him of the situation, and that Davenport thereupon informed Anderson that he would not be contentious about a few hours' delay. There cannot be the slightest doubt that Davenport by this statement waived a strict performance on the part of Anderson and Fuller of that part of their agreement calling for the payment by noon. Anderson yet had an hour in which to act and but for this statement on the part of Davenport he might well have made other arrangements than those which had been made for the payment of this sum at the noon hour. At all events, he had a right to rely as he did on Davenport's assurance that he would not be contentious about a few hours' delay. Having waived his right to a punctual performance of the August 1st payment, and so to a forfeiture for a slightly tardy performance of that payment, Davenport had nothing to offer or give Anderson for the latter's promise on August 3rd to pay the additional $3,250.00 called for by the supplemental agreement of that date. But it is insisted that Daven-

port, in good faith, believed that he had a right to such forfeiture and so the surrender of what he in good faith believed to be his right was a good consideration for this undertaking on the part of Anderson and Fuller. As Davenport must have known that he had waived his right to a strict performance of the original agreement, he should have known that he had no right to the forfeiture he was asserting. Conceding, however, his good faith, we are met with the rule in this state that good faith alone will not support a compromise settlement. A claim not wholly without foundation must be present. This rule was announced by this court, in the case of Hardin's Admr. v. Hardin, 201 Ky. 310, 256 S. W. 417. In that case, after a full discussion of the matter and citation of many authorities, we came to the conclusion that we could not agree with those cases which held that good faith alone was sufficient to support a settlement contract, and decided that the surrender of a claim which is entirely without foundation either in law or in equity does not afford a sufficient consideration for a compromise. In the case before us Davenport was in possession of all the facts. He knew that he had waived the strict performance of the August 1st payment. The $3,500.00 due on August 1st was ready on August 3rd. Under such circumstances, had Davenport undertaken to enforce a forfeiture no court of equity would have granted him any such relief. His claim of forfeiture then of August 3rd was utterly groundless and without merit, and, being so, does not support the compromise agreement then entered into. As there was no consideration for the supplemental agreement, it follows that Davenport had no right to recover in this action, and the judgment of the lower court dismissing his petition and quieting the title of the Fuller Oil Corporation was correct and is affirmed.