## Ward et al. v. Daugherty.

(Decided March 8, 1929.)

BARNES & SMITH for appellants.

WHITE & SMITH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE McCAND-LESS—Affirming.

Appellants, Onie Ward, Lida Ward, and Annie Ward, on the 10th day of July, 1924, executed an oil and gas lease to C. E. Daugherty on 127 acres of land in Ohio county, Ky., to remain in force for the term of one year from its date, and as long thereafter as oil and gas should be produced. The consideration for this lease was $750 in cash paid, and, in addition thereto, the usual covenants for the payment by lessee of the net value of one-eighth of the oil produced and of $100 annually on producing gas wells and to furnish the lessor with domestic gas from such wells. Also, in the event a test well then being drilled on the King farm adjoining the leased lands should prove to be dry, the lessee was to drill two test wells on the leased premises, each of these to be sunk to the Jett sand, unless oil was found at a lesser depth in the Barlow sand, the first of these wells to be begun within 30 days from date, and the second within 30 days after the completion of the first. In the event oil was produced in paying quantities from either of these wells, the lessee was to pay an additional consideration of $750, and also to develop the entire lease in a businesslike manner. If neither was a producer, lessee might surrender lease, and was also given the right to withdraw the casing and remove it from the land. The test well on

the King farm was dry, and lessee paid the initial $750 in cash, and drilled one test well to the Jett sand on the leased premises. This proved dry, whereupon he withdrew the casing, and, without drilling a second test well, abandoned the lease. On July 25, 1925, lessors filed this action in equity in the Ohio circuit court setting up the above facts, but not alleging the existence of any oil in or under the leased premises. The prayer was that the lease contract be canceled, and that they recover the sum of $2,000 in damages for breach of contract. The case was submitted on the pleadings and exhibits, and judgment was rendered in favor of lessors canceling the lease, but dismissing their claim for damages. The lessors appeal.

The chancellor based his action upon the ground that, "in the absence of an averment of the existence of oil or gas in the leased lands in sufficient quantities to make the royalties of value, the petition did not authorize a recovery against appellee for his failure to develop the lease according to the contract." This ruling seems to be in accord with authority.

In Miles v. Miller, 12 Bush, 134, this court held that plaintiff could recover no more than nominal damages under a petition containing similar allegations, saying:

"In declaring on contract, . . . it is necessary to state the contract, the breach, *and the facts which show the loss or damage sustained by reason of the breach.*" (Our italics.) See, also, Sedgwick on Measure of Damages, 200, 201; Newman's Pleading & Practice, sec. 338C.

In Duff v. Bailey, 96 S. W. 577, 29 Ky. Law Rep. 919, there was an issue on the point here involved. We said: "It was not averred that there was oil or gas in the property to be developed, and, as that was the only thing undertaken to be done by appellees by the contract, they would not be liable under it for damages for failure to perform it unless because of such failure they had not developed from the property what they would have developed had they performed it."

In the later case of Clark v. Cooper, 197 Ky. 530, 247 S. W. 929, the court, on the authority of Duff v. Bailey, supra, said:

"We have held, in accordance with a rule generally recognized, that where the whole compensation of a party under a contract for the exploration

of land for oil or gas depends upon the discovery of such minerals, no damage can be allowed for failure to carry out the contract unless there is a showing that the land contained oil or gas and that as a consequence in the absence of an averment in the petition that there was oil or gas in the land in such quantities as to make the royalty of value there was a failure to state a cause of action, and it was error to overrule a demurrer thereto.''

However, the court further said:

''The question as to whether or not there was oil or gas in the land is not an issue in this case since no claim of damages is based upon a failure to receive royalties.''

And if we assume the above quotation to be dicta, nevertheless it is persuasive as to the views of the court, and indicates an intention to follow Duff v. Bailey. It is argued in appellant's brief that the case of Duff v. Bailey, supra, was decided on a point other than the one quoted, and that the expression quoted from it was also dicta, but we do not so understand the Duff opinion. True, the court gave two reasons as the basis of that opinion, either of which was sufficient, but that does not indicate that it did not rely on the one quoted. It is insisted, however, by appellant that the rule in the Duff case is restricted to cases in which development is the sole consideration, and in which lessees are vested with discretion as to whether or not they shall drill. But that it does not apply to this case, because here two test wells were to be drilled at all hazards for experimental purposes; these were required by the terms of the contract and the lessee given no discretion as to them; it being important for lessor to have these tests made in order that he might ascertain the value of his land whether development followed or not. Therefore his damages are not measured by the loss of prospective development, but by the estimated cost of drilling the well which the lessee failed to drill. The argument is plausible, but not convincing. There is no allegation in the petition as to the cost of drilling an additional well, or that the failure to drill such well caused plaintiffs to lose any royalties, or that the value of this land would have been enhanced by such drilling. It does state: ''The real purpose and consideration for the execution and delivery of the lease contract

being the exploration and development of said properties for oil or gas.'' And that such was the purpose is also evidenced by the fact that the lessee was required to pay $750 in cash before drilling the first test well, and was to pay roylaties and $750 additional, in the event either of the test wells was a producer. It is difficult to see how appellant's lands would have been enhanced in value by drilling another test well, unless it proved to be a producer, or how they could be damaged by a failure to drill such well, unless oil exists in or under the land. It must not be overlooked that the contract is to be construed from the viewpoint of both parties, it is not to be thought that lessee was interested in testing appellant's land except for the purpose of development. He received nothing from any wells aside from development. Indeed, he paid a consideration for the privilege of drilling them, and the only thing he could look forward to was the value of the oil from the developed lease. It is therefore evident that development was the real purpose in the minds of the parties to the contract. It follows that the petition did not state a cause of action for more than nominal damages, and, as this was substantially allowed in the cancellation of the lease and judgment for costs, the court did not err in refusing to give more, which is substantially the effect of his ruling.

Wherefore, perceiving no error, the judgment is affirmed.