# Swiss Oil Corporation v. Dials et al.

(Decided December 10, 1929.)

E. L. McDONALD for appellant.

R. T. CALDWELL for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

In 1916, J. A. Dials executed to A. C. Albin an oil and gas lease on 215 acres of land in Lawrence county. It appears to be in the usual form of such instruments with the usual provisions. Subsequently the lease was transferred to the Union Gas & Oil Company which began the drilling of wells thereon. Six wells were drilled on the leasehold premises. About 1924 a controversy arose between the owners of the royalty interest, who are appellees here, and the Union Gas & Oil Company, the then owner of the lease. It was insisted by the royalty owners that the terms of the lease required additional develop-

ment, while the owner of the lease insisted that the the development was sufficient under the terms of the lease. On August 20, 1920, the Union Gas & Oil Company submitted a proposal to the owners of the royalty interest, wherein it offered to settle the controversy on the basis of paying a certain fixed amount each year in lieu of drilling a certain number of wells if the royalty owners would withdraw their claim that additional wells should be immediately drilled, and allow it to drill the wells as seemed to it best. The proposal was accepted, and an agreement was made substantially embodying the terms of the proposal. Subsequently to this agreement the Swiss Oil Corporation, appellant, acquired the lease from the Union Gas & Oil Company. The Union Gas & Oil Company paid to the owners of the royalty interest the sum called for in the agreement, and the appellant continued these payments after it became the owner of the lease, but finally decided that it would not pay anything further under the terms of the agreement. Suit was instituted by the appellees to recover the amount due under the terms of the contract. The appellant defended on the ground that it did not assume the contract when it purchased the lease, and that it was purely a collateral contract and not a covenant running with the leasehold; that the agreement did not contain a covenant for payments running through an indefinite period; that the agreement to make such payments was without consideration and was made under a threat of litigation and in ignorance of its legal rights; that appellant made payments in accordance with the terms of the contract through inadvertence and in ignorance of the facts and of its rights, and its answer contained a counterclaim seeking to recover back the amounts which it had paid.

It is first contended that the contract did not require the Union Gas & Oil Company to pay any sum for any length of time. The proposal is definite and certain about the payments. It was to the effect that, if the royalty owners would allow the company to suspend drilling until such time as it might feel warranted in resuming drilling, it would pay annually, in addition to the wells then drilled, $100 for each five additional wells based upon one well for 25 acres, or $4 per acre, the same as if the wells had been drilled and were paying gas wells, with the provision that the payment should be made on the 1st day of August in each year, beginning with the year in

which the contract was made, and that they should continue until the wells had been drilled, or until the lease should be surrendered. There was a provision that, when a well should be drilled without its producing gas in paying quantities, the payment for 25 acres should cease. One well was drilled after the agreement was made, and the amount to be paid annually appears to have been adjusted to conform to the terms of the contract. It is insisted that, as the lease had been fully developed, appellant should not be required to make additional payments, but the contract is to the contrary. It calls for a performance in accordance with its terms. It was not left to the judgment of the company as to whether it should drill additional wells. The case of Swiss Oil Co. v. Risner, 223 Ky. 397, 3 S. W. (2d) 777, and other cases preceding it dealing with the same question are not in point, as there was no specific agreement to drill a certain number of wells.

The case of Ward v. Daugherty, 228 Ky. 326, 14 S. W. (2d) 1089, held that the writings must be construed from the standpoint of both lessor and lessee and in the light of their rights already fixed by the existing lease. That is a correct statement of the rule. But the writing in this case speaks for itself and there is nothing left to the construction of it other than to interpret the plain meaning of the language as written. We cannot agree with counsel for appellant in his construction of the contract.

It is urged that there was no consideration for the agreement on the part of the Union Gas & Oil Company to pay additional rentals. That there was a bona fide dispute between the parties at the time of the making of the contract cannot be questioned. The general rule is that, if there is a question between the parties about which reasonable men might differ as to the outcome, the parties themselves may adjust it by a compromise agreement, and the agreement must be upheld. Berry v. Berry, 183 Ky. 481, 209 S. W. 855. It is admitted that parties had a controversy as to whether the farm had been sufficiently developed by the drilling of the six wells. There was a difference of opinion between the parties as to whether there should be additional drilling. It is shown that suits had been filed against the company by reason of other similar controversies, and that the courts had looked with favor upon the contention of the royalty owners. It may be true that subsequently this court, by its opinions, announced rules which, if known at the time

of the original controversy, would have been conclusive on the parties, but that does not mean that a real controversy may not have existed at the time, and that men of reasonable minds may have differed as to the rights of the parties.

It has been held that, where there is no controversy that is bona fide, or where men of reasonable minds might not differ about it, a settlement is not sufficient consideration to support the settlement contract. In such cases the claim must have been wholly without foundation, admitting all the facts as true. Davenport v. Anderson, 216 Ky. 22, 287 S. W. 25.

Neither do we believe that appellant has brought its case within the rules announced in Underwood v. Brockman, 4 Dana (34 Ky.) 309, 29 Am. Dec. 407. It was there held that when one who has been made feeble in body and mind by reason of disease and confinement, or by being persecuted with a claim for the most part without foundation, enters into a compromise so iniquitous as to be per se evidence of surprise, fraud, or ignorance of the law, he is entitled to relief from a compromise. That case has been followed many times since the opinion was delivered. There is a long line of cases between that case and Davenport v. Anderson, supra, but an examination of the record does not show that the appellant was coerced into the execution of the agreement, or that it was any more ignorant of its rights than was the general public of similar rights. Appellant was represented by skillful and able attorneys. It knew all of the facts and circumstances. A suit was threatened, and, rather than take a chance on the result of litigation, it entered into the contract now under consideration. We cannot say that the contract was without consideration, or that there is any equitable ground growing out of the manner of its execution which entitles appellant to any relief.

It is urged that the contract between the Union Gas & Oil Company and appellant was a collateral contract, and that appellant was under no obligation to carry out its provisions when it became the owner of the lease. There is no defence on the ground that appellant was without notice of the contract. Its conduct shows that it did have notice, but, leaving all of that to one side, it appears to us that the contract, if not an amendment to the original lease contract, was one which touches and concerns the land itself, and, if that is true, the obligation in the con-

tract passed with the ownership. It was a major part of the very substance of the contract. Since the rule in Spencer's case (4 Coke, 16, 1 Smythe's Lead. Cas.; 9th Am. Ed. 174) it has been uniformly held that, when the covenant extends to a thing in being part of the demise, annexed and appurtenant to the thing demised, it shall go with the land and shall bind the assignee, although he be not bound by express words. In 7 R. C. L. 1101 it is said:

"If the thing to be done is merely collateral to the land, and does not touch or concern the thing demised, then the assignee is not charged, though named in the covenant. The covenant is merely personal, and does not affect the land demised."

7 R. C. L. 1102 contains this statement:

"And so, where the covenant concerns land, and is one which is capable of being annexed to the estate, and it appears that it is the intention of the parties as expressed in the instrument, then it should be construed as running with and charging the land thereafter in order to carry out such intention."

Further along in the same paragraph it is said:

"The important consideration is whether the covenant is intended to be and is annexed to the estate. If this be so, the rights and liabilities of those who take the estate and possess the land during the term flow from a privity of estate and not from any assignment of right or contract."

It is the general rule that, in order to make a covenant run with the land of the covenantor and bind his heirs and assigns, the covenantee must have such an interest in the land as to amount to a privity of estate between the parties to the covenant; and, strictly speaking, such privity must exist between the parties when the covenant is made. 7 R. C. L. 1103. There is no doubt that the owners of the royalty interest in the leasehold and the owner of the working interest had such an interest in the land as to amount to a privity in estate between them. When appellant became the owner of the leasehold, it was under the duty to assume the burdens placed thereon by its predecessors in title. The terms of the contract are enforceable as written.

Judgment affirmed.