### Bain v. Graber.

(Decided Nov. 30, 1937.)

**As Modified on Denial of Rehearing Jan. 21, 1938.**

:394

E. BERTRAM for appellant.

H. C. KENNEDY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

George Graber, plaintiff below, brought this suit to recover of T. M. Bain, defendant below, for certain pipes or casing left on the premises of the landowner, after the lessee had ceased drilling and left the premises. The trial resulted in a jury verdict and judgment thereon in favor of the plaintiff for the sum of $500. Defendant has appealed from that judgment insisting on a reversal on the grounds that the amount found for the plaintiff is excessive; the verdict is not sustained

by the evidence; and that the instructions were erroneous.

The facts and attendant circumstances of the case are, in substance, as follows:

In May, 1920, Sam Henninger and his wife, L. L. Henninger (the latter being owner of the land), leased the oil and gas on their land to the Illiken Oil Company for a term of 12 months, "and as long thereafter as oil or gas or either of them is produced therefrom by the party of the second part, their successors or assigns."

The Illiken Oil Company began drilling on the land for oil and gas soon after the execution of the lease. It drilled two holes; the last one being drilled in the year 1925. It failed to find either oil or gas, and became financially involved and ceased drilling, and all members of the company left the community and none of them has ever returned. C. M. Work was an employee of the oil company, and, soon after it ceased drilling, it executed and delivered to C. M. Work the following writing:

"August 15, 1925. Authority is hereby given to Mr. Charles M. Work to sell all or any portion of the oil well tools and material owned by the undersigned company and now located upon the farm of Mr. Sam H. Henninger, near Mill Springs, Wayne County, Kentucky, upon the following conditions: Nothing shall be sold at a less price than its fair market value, or approximately fifty per cent of its cost as shown on the inventory of said material, dated August 8, 1925, a copy of which is in his possession. Upon making any sale or sales of said material said Work shall have and may retain from the money received therefrom a commission of ten per cent (10%). * * *"

The writing then further set out an itemized list of bills or debts, totaling the sum of $158.

In addition to the pipes or casing left in the wells, the oil company left certain other personal property, and C. M. Work sold some of the personal property and paid the debts of the lessee, but left the casing in the wells and sold none of it. After a number of years, the exact date not being shown in the record, Sam Henninger, colessor with his wife and acting as her agent, sold some of the casing to Wayne county to be used for

road construction purposes. In the year 1936, appellee, Graber, leased certain oil and gas lands in Clinton county and the same C. M. Work was employed by him in operating the lease. Graber, being in need of certain pipes or casing in operation of his lease, inquired of Work if he knew where he could find some casing, and Work made reference to the casing on the premises of the Henninger lease, and Graber went to see Henninger about procuring the casing. Up to this point the facts are not in dispute; but, as to what took place thereafter, relating to the negotiations and sale of the casing, the evidence is somewhat conflicting.

Graber testified that after Work told him about the casing on the Henninger lease, he, Graber, Claude Goodrich, and William Kelsey went to Henninger's home and Graber asked Henninger what he wanted for the casing, and Henninger said:

> "Mr. Graber, you can have all you get out of it, it won't cost you a cent. I will furnish you trees for poles, and we went ahead and pulled the casing."

He said the casing was hard to pull, and it cost $242 to pull it. After Graber pulled the casing, he moved it to his lease in Clinton county and it stayed there overnight, and on the next morning Bain took it away. He testified that there was 1,295 feet of the casing, which was of different sizes, and, according to his figures, it was worth $518, but he sued for only $500. He said that Henninger was on the premises and saw him pulling the casing, and made no objections thereto. He said Mr. Work also knew he was pulling the casing, but made no complaint until he saw he could get it out of the ground, and he detailed the following conversation:

> "Mr. Work come to me and said, 'you pull the casing, it belongs to me,' and I said 'it belongs to Mr. Henninger,' and they got together and said they had reached an agreement, and I said, 'I don't want any trouble if I can settle this matter' and he said 'we will let you pull it out on top of the ground and then set a price and I says, 'no, we will set a price now,' and he said, 'the price will be 30c per foot and we will deduct the cost of pulling,' and I said 'all right, if you want the casing, that will be satisfactory.'"

William Kelsey testified that he was present and

heard the conversation between Graber and Henninger and Henninger said to Graber, "Go ahead and pull the casing, you are welcome to all you can get out of it." Claude Goodrich testified that he helped Graber pull the casing, and saw Henninger on the premises at the time they were pulling it, and Henninger told Graber he could have the pipe if he could pull it and could cut trees to use in pulling it. Jude Elam and Walter Elam both helped Graber pull the casing, and saw Henninger about the premises, but heard no objections made to pulling the casing.

The appellant, Bain, testified that he bought the casing of C. M. Work, agent for the Illiken Oil Company. He said he was at the well when Graber pulled the casing and saw about 400 feet of it, and talked to Graber about it, but Graber did not propose to buy it of him, and said Graber told him he was going to move it to his lease in Clinton county, and after it was moved he, Bain, sent his employees to Clinton county and took charge of the casing and moved it away. Henninger testified that the lessor, Illiken Oil Company, made arrangements with C. M. Work to take care of the casing, and when Graber asked him if he could pull the casing he told Graber he could pull it as far as he was concerned, but he did not claim to own the casing, and Graber did not offer to pay him anything for it until after it was pulled, and then he offered him $100 for it. He admitted that he hald sold some of the casing to the county, or to one of the magistrates of the county, before the alleged transaction with Graber. He denied that he gave Graber the casing, and also denied making the statements to the other witnesses, who testified that he told Graber he would give him the casing if he would pull it.

C. M. Work testified that after the oil company had completed the last well in 1925, it seemed to be "hard up" for money and had not completed the well and owed some unpaid bills, and gave him the writing, quoted above, authorizing him to sell a sufficient amount of its personal property to pay its debts, which he did. He was asked if Mr. Henninger represented his wife and acted as her agent in the business, and he answered, "I think so," and detailed certain acts of Henninger in connection with the lease. He told about the transaction with Graber in the following language:

"A. Mr. Graber drilled a well in the edge of Clinton County. He and Jude Elam come up and said they had to put in some casing in the well and I had drilled down there for them a while: they said they had hunted everywhere and asked me if I knew of any. I said there is some on Meadow Creek and if it was still there they might buy it. We went up there and found Mr. Henninger and found the pipe across the road and filled up with dirt and we went back to the well and they got a piece of pipe and put it in the well.

"Q. Did you agree to that? A. Yes, the company had been gone a long time and hadn't come back."

It will be noticed that when Graber asked Work if he knew where he could find any casing, Work told Graber that there was some on Meadow Creek (the Henninger farm) "and if it was still there they might buy it," indicating that he did not as much as know whether the casing was still on the Henninger premises. Henninger having theretofore sold a part of the casing, it might be inferred from Work's statement that so far as he knew Henninger might have already sold all the casing. If Work still had authority to sell the casing as he now claims in his evidence, it is difficult to understand why he did not make that fact known to Graber, instead of merely referring him to the Henninger premises with the statement that if it was still there they might buy it, without disclosing to him who had the right to sell it.

He further stated that he knew about Mr. Graber pulling the casing, and said he told him not to pull any more of it; that he did not want it moved, but he went ahead and pulled it and moved it to Clinton county. He said he tried to make an agreement, but Graber would not agree with him on any terms, and never did offer to pay him anything for the casing, and he then sold the casing to appellant, Bain. He further stated, in substance, that the Illiken Oil Company had not abandoned the lease and was intending to come back and drill further, but he was indefinite as to how long it had been since he had heard from the oil company, and he filed no correspondence or stated the nature of the information he had from the company, but stated, rather as a conclusion, that the company had not abandoned

the lease. He was asked how much appellee paid him for the casing and he said he did not remember, but said he had the money and was going to keep it if he could. Henninger was recalled by the plaintiff and asked about whether or not he was to share with Work the price paid him by Bain for the casing, and he said that he did not know what he would get out of it, and that he left that to Mr. Work, but denied that he had any definite understanding with Work as to division of the money.

Whether or not Henninger authorized Graber to pull the casing and move it from his premises, as claimed by Graber, the evidence is conflicting, but it appears to us that the preponderance of the evidence tends to sustain Graber. He testified in no uncertain terms that Henninger told him that he could have the casing if he would pull it and move it from the farm, and it would not cost him anything, and on this point he was corroborated by a number of witnesses who testified that they were present and heard the conversation, and another witness testified that in conversation with Henninger he asked him what he was getting out of the casing, and he said, "not a cent." It cannot be doubted that the evidence is sufficient to sustain the jury in finding that Henninger authorized appellee to pull the casing and remove it from the premises without cost.

This brings us to the question of Henninger's authority to dispose of the casing. It is established by all the evidence that the Illiken Oil Company was unsuccesssful in discovering oil or gas and became financially involved and left the lease and premises, and no member of the company had ever returned or taken any steps to further develop the lease within 11 years since the last drilling. The lease was for one year, or as long thereafter as the lessor or its assigns produced oil or gas, and it is admitted that no oil or gas was produced; nor is there any claim that the lease was assigned or that any one had produced oil or gas. The power of attorney or authority executed by the oil company to Work authorized him to sell any or all of its personal property, which included the casing, if necessary, and to apply the proceeds of same to the company's debts. If the oil company had contemplated returning to the lease for the purpose of further operating it, it is un-

reasonable to believe that it would have authorized C. M. Work, its agent, to dispose of its personal property which included the casing or perhaps all other machinery or fixtures indispensably necessary to the operation of its lease. We have the further fact that Henninger had exercised the right of ownership over the casing left in the ground by selling some of it to the county. And as we have already stated, the preponderance of the evidence shows that he further exercised such rights by authorizing appellee to pull the casing and remove it from the leased property. C. M. Work's testimony that the company had not abandoned the premises, and was intending to return for further drilling, was a conclusion on his part without stating facts to sustain his conclusion. Taking in consideration the terms of the lease, the power of attorney or authority to C. M. Work to sell the property of the company, the long lapse of time without any member of the company having returned to the premises or attempting to further explore the lease, is conclusive that it had abandoned it.

It is the general rule that the lessee of lands for oil and gas purposes must remove the fixtures and machinery therefrom during the term of the lease, or at least within a reasonable time thereafter, and if this is not done the fixtures and machinery, especially casing left in the soil, become the property of the lessor. Patton v. Woodrow, 198 Ky. 85, 248 S. W. 226, and cases therein cited. What constitutes reasonable time is a question of fact that must be determined from the facts and surrounding circumstances of each case.

Appellant relies on the cases of Bertram v. Bradley, 257 Ky. 751, 79 S. W. (2d) 197, and Duff v. Bailey, 96 S. W. 577, 29 Ky. Law Rep. 919. In the Bertram v. Bradley Case, supra, when the lessee left the premises he gathered up some machinery used in connection with the development and stored it in a building erected for that purpose on the leased land, under an agreement between the then owner of the property and the then owner of the lease, in consideration of a stipulated rental to be paid monthly for the storing privilege. It was held that the rental agreement and storage of the machinery created the relation of landlord and tenant and a mere lien on the stored machinery for unpaid rent. The facts in that case being greatly at variance

with the facts in the present case, it is at once apparent that it does not support appellant's position.

It may be conceded that the Duff v. Bailey Case, supra, tends to support appellant's position in the present case if that case was still recognized and followed as the law of this jurisdiction relating to the subject-matter here under consideration. But it will be noticed that the later case of Patton v. Woodrow, 198 Ky. 85, 248 S. W. 226, and cases therein cited, are in conflict with the Duff v. Bailey Case. And furthermore, in the recent case of Kentucky Block Cannel Coal Co. v. Stacy et al., 266 Ky. 59, 98 S. W. (2d) 61, 62, the Duff v. Bailey and Patton v. Woodrow Cases are referred to in the following language:

"The case of Duff v. Bailey, 96 S. W. 577, 29 Ky. Law Rep. 919, relied on by appellees, is out of harmony with the later case of Patton v. Woodrow, supra, to the extent that it decides that title to fixtures left on leased property an indefinite time after the lease has been terminated remains in the tenant, and must be considered to that extent to have been overruled by the later opinion."

It is seen that that part of the Duff v. Bailey Case relied on by appellant is overruled by the cases of Patton v. Woodrow, and Kentucky Block Cannel Coal Co. v. Stacy, supra.

In the last-cited case it is further held that it was unnecessary to consider whether the lease terminated by virtue of its own provisions, or, as a matter of law, as result of the abandonment, and that in either event, the tenant had a reasonable time, and no more, within which to remove the fixtures.

Under the proven facts and circumstances of the present case, it cannot be denied that the lessee, Illiken Oil Company, had had more than a reasonable time in which to remove the casing before Henninger exercised the rights of ownership over them as disclosed by the evidence; and his conduct is conclusive that he had treated the lease as abandoned and assumed to be the owner of the casing in question. Of course, if certain parts of Henninger's evidence is to be believed, he had waived a forfeiture, but he admitted that he sold some of the casing to Wayne county, and such action on his part amounted to an election to treat the lease as aban-

doned and the casing forfeited. A person's acts and conduct may furnish stronger evidence than his verbal statements.

It is next insisted that instruction **No. 1 is erroneous.** That instruction reads as follows:

"No. 1.

"You are instructed that the Illiken Oil Company had abandoned the well and premises containing the oil well casing in controversy, and that after said abandonment the said company or its agents had a reasonable time thereafter to remove the casing from the Henninger premises, and that if the company or its agents failed to do so within a reasonable time, the casing became the property of the land owner.

"If the jury believe from the evidence that the said company or its agents did fail within a reasonable time after the abandonment of the said well to remove the casing therefrom and that Sam Henninger as agent for his wife, contracted and agreed with the plaintiff, George Graber that he might pull said casing and remove it from the premises then you will find for the plaintiff; but unless you shall so believe, you will find for the defendant."

The objection urged to the instruction is that the court told the jury that the Illiken Oil Company had abandoned the well and premises containing the oil well casing in controversy. It is insisted that the question of abandonment should have been submitted to the jury. In our discussion of the evidence it is pointed out that Henninger's conduct as shown by his own evidence amounted to an election to consider the well abandoned and the casing in question forfeited, and it was conclusively shown that the lessee had abandoned the leased premises, and that its failure to remove the casing within a reasonable time justified the lessor in taking the action he did. There are certain other minor objections made to other instructions, but upon examination of the instructions as a whole we find them to be substantially correct.

The judgment is affirmed.