Paula HARMON, Appellant,

v.

Mary McMASTERS and Jerry McMasters, her Husband, Appellees.

No. 2000–CA–002164–MR.

Court of Appeals of Kentucky.

Oct. 5, 2001.

Don A. Bailey, Louisa, KY, Brief and Oral Argument for Appellant.

Nelson T. Sparks, Louisa, KY, Brief and Oral Argument for appellee.

Before GUDGEL, Chief Judge; COMBS and JOHNSON, Judges.

## OPINION

JOHNSON, Judge:

Paula Harmon has appealed from a summary judgment entered in the Martin Circuit Court on August 14, 2000, which denied her the use of free gas from a gas well located on her property. On appeal, she argues that the right to use free gas is a right that attaches to and "runs with the land." Having concluded that there is no genuine issue as to any material fact and that the appellees are entitled to judgment as a matter of law, we affirm the trial court, although we do so for different reasons.[1]

Both Paula Harmon and the appellees, Mary McMasters and her husband, Jerry McMasters, are claiming the right to free household gas from a gas well drilled by the lessee of the mineral estate. In 1912, Napoleon Harmon sold the mineral rights to two separate, adjoining tracts of land located on Tug Fork in Martin County, Kentucky, to J.R. Fairchild and J.S. Cas-

sady, who subsequently leased the two tracts to Warfield Natural Gas Company for the exploration of oil and gas.[2] Columbia Natural Resources has succeeded to ownership of the leasehold. As is common in a producer's lease, the lease requires Columbia to allow one household to receive free gas.[3]

In 1925, Napoleon conveyed the surface interest in the two tracts of land to his two sons, Elzia and Eark. In 1934, Elzia and Eark divided the property with Eark receiving Tract I and Elzia receiving Tract II. In 1944, the gas well in question was drilled on Tract II and Elzia began using gas for his house located on Tract II. Paula now owns Tract II. Eark died in 1961 and his interest in Tract I passed to his heirs. Elzia obtained title to Tract I by deed in 1969. Elzia, who had previously moved away from Tract II, moved onto Tract I and began receiving free gas for his residence on Tract I.[4]

Paula Harmon is the daughter-in-law of Elzia, and the widow of Elzia's son, William. Paula and William obtained title to a two-acre portion of Tract II (where the gas well is located) in 1974 from Elzia, and the remainder of Tract II from him by deed dated April 16, 1987.[5] While Paula has not claimed that either of these deeds has any express provision addressing gas rights, it is undisputed that Paula and William built a house on this land and received free gas from 1974 to 1998. On November 30, 1987, Elzia deeded Tract I of the land to

---

1. *Haddad v. Louisville Gas & Electric Co.*, Ky., 449 S.W.2d 916, 919 (1970).

2. Apparently, gas production was obtained on the leasehold.

3. Both parties agree that only one household has the right to receive free gas. Unfortunately neither party introduced the original gas lease into the record. For the purposes of this opinion, we are assuming that the origi-

nal gas lease provided for free gas to a household and that both tracts of land were subject to the same leasehold.

4. While Elzia was away from Tract II, the house receiving the free gas was rented for a period of time before it was destroyed by fire.

5. Neither of these deeds was introduced into the record.

the McMasterses, who were his daughter and son-in-law. This deed contained a clause which stated, "Grantors also convey along with the herein described property *the* free gas" [emphasis added]. At the time of this conveyance, Elzia was obtaining free gas for his house which was located on Tract I. For a number of years, the residences of Elzia, Paula, and the McMasterses were all receiving free gas. However, Columbia later objected to providing free gas to more than one household and stopped providing free gas to any of the three parties until this dispute could be resolved.[6]

On January 19, 2000, Paula filed suit against the McMasterses claiming sole entitlement to the free gas. On August 14, 2000, the Martin Circuit Court entered summary judgment in favor of the McMasterses, concluding that the right to free gas follows the ownership of the surface and is freely transferable and is assignable as any other property. This appeal followed.

Paula argues that "the right to use free gas under Kentucky law is a covenant running with the land and the owner of the surface interest is the person having the right to use the free gas." Her central argument is that since the gas well is located on Tract II and since Elzia originally used the free gas for a house constructed on Tract II, the right to use free gas from the well located on Tract II attached to the surface rights of Tract II.

In *Warfield Natural Gas Co. v. Small,*[7] a dispute arose between Maudie Small, who was the surface owner of a tract of land with a gas well constructed on it, and

Warfield Natural Gas, which owned the mineral rights to Small's land. Small was not the owner of the land when the lease was originally executed. Warfield argued that Small was not entitled to free gas as a surface owner because the original lease did not expressly state that the right to free gas would extend to subsequent owners. Rejecting this argument, the Court stated:

> We see no merit in this contention because the free gas clause in the original lease is a covenant running with and attached to the *surface* of the land. That covenant was for gas sufficient for domestic use *on the premises* and certainly could not be taken advantage of by the owner of the oil, gas and mineral rights, which had become separated from the surface of the land, because the owner of such mineral rights did not live on the land. A covenant or agreement in a gas lease that the lessor shall have a part of the gas free is a covenant running with the land. Thorton Oil and Gas, section 159, *Indiana Natural Gas & Oil Company v. Harper,* 50 Ind.App. 555, 98 N.E. 743. See also in this connection *Swiss Oil Corporation v. Dials,* et al., 232 Ky. 298, 22 S.W.2d 912. As the free gas covenant is a covenant running with the land, it runs with the surface of the land and not with the oil, gas and mineral rights since the covenant could be a benefit only to one occupying and using the surface of the land [emphases original].[8]

Since *Warfield* did not involve a factual situation similar to the case *sub judice,* we do not believe that case supports Paula's

---

**6.** Once again, the record is devoid of any correspondence stating Columbia's position in this matter and it is not a party to this lawsuit. However, it seems illogical that Paula and the McMasterses would be litigating this case if it was not already determined that

one of them had an actual right to the free gas.

**7.** 282 Ky. 347, 138 S.W.2d 488 (1940).

**8.** *Id.* at 489.

argument. The key distinguishing fact in the present case is that both tracts of land in question involved a common mineral rights conveyance and a common leasehold. Thus, for reasons that follow, we believe that Elzia had the right to transfer the free gas to any household on the surface of the original leasehold.

A general statement concerning this area of the law can be found in American Jurisprudence:

> *The right to take free gas under a free gas clause in an oil and gas lease is transferable and assignable as is any other property interest.* However, while the use of free gas under a free gas covenant may be transferred from one dwelling to another on the leased premises, the right will not be extended to include a subsequently erected building in addition to the original building. Also, if a free gas clause is limited to the "principal dwelling," the obligation to supply gas cannot be extended to additional dwellings without the consent of the lessee [emphasis added][footnotes omitted].

> A free gas covenant runs with the land, unless the instrument in which the covenant appears clearly indicates that the right to such gas is to be only personal [footnotes omitted].[9]

We believe that the case at bar more closely resembles the case of *Salisbury v. Columbian Fuel Corporation*.[10] In *Salisbury*, the leasehold interest included the right to free gas for the principal dwelling on the land. Similar to the case *sub judice*, the leasehold involved several tracts of land that would later be divided among family members. In *Salisbury*, the principal dwelling was burned in a fire and then the free gas was transferred to a "rent

house" which was located on the surface covered by the leasehold. Thereafter, a new house was constructed at the site of the former principal dwelling and the gas rights were transferred back to that house. Finally, after the land was divided among several family members into several parcels, the right to free gas was transferred to Parcel No. 5. The land where the rebuilt principal dwelling house was located became Parcel No. 6.

In an argument which is similar to Paula's argument, the landowners of the principal dwelling house in *Salisbury* argued that the right to free gas attached to that portion of the land. The Court held that the owners of the surface rights had the right to transfer the free gas to another tract of land on the same leasehold and stated:

> The fact that the gas has been furnished to three houses, the original principal dwelling, the replacement to it, and the "Rent House," indicates that the covenant runs with the land and is not personal, and it has been so considered by all the parties concerned until appellants acquired Parcel No. 6. In the division of the Hall lands the provision in favor of Parcel No. 5 shows that the Halls did not consider the covenant personal or restricted to the principal dwelling house. On the contrary, it was considered a right incident to ownership of the surface. As quoted, the lease expressly provides for assignment in whole or in part. Such division was contemplated by the parties. *No reason is advanced why all of the surface owners, without objection by the lessee, could not have assigned or disposed of the right to free gas so long as it continued to run with some part of the surface and was not enlarged.* ... The conclusion is that

---

9.   38 Am.Jur.2d *Gas & Oil* § 95 (1999).

10.   Ky., 387 S.W.2d 864, 866 (1965).

the covenant was one running with land which was assignable to a portion of the surface. Appellants have not shown clearly that the covenant was intended as a personal one [emphasis added].

In the Moore case, use of gas in a tenant house piped from the main dwelling was prohibited. The use of the gas in a different house on the lands is not a violation of the covenant so long as the use is limited to one house as provided in the lease.[11]

■ We believe that *Salisbury* stands for the proposition that free gas may be transferred from one dwelling to another so long as the use is limited to one dwelling, and so long as the transfer is to another house on the original leasehold.

Further support for this rule can be found in American Law Reports:

> The fact that two or more tracts of land owned by the same person are included in a single lease of land for the development and production of oil and gas has the effect of making the two or more tracts a unit, in so far as concerns the effect of developing the wells[.][12]

■ While the above statement refers to mineral exploration and the develop-ment of land, we believe it supports the position that Elzia's two adjoining tracts of land were part of the same leasehold. Thus, similar to *Salisbury*, Elzia had the right to transfer the use of the free gas to any single house on the surface of the leasehold. After a thorough review of the case law and legal authority, we hold that Elzia retained the right to transfer the free gas to the McMasterses. Once he conveyed this right to the McMasterses by deed, the only household that was legally receiving free gas was the McMasters home located on Tract I of the common leasehold.

Having concluded that there is no genuine issue as to any material fact and that the McMasterses are entitled to judgment as a matter of law, the summary judgment of the Martin Circuit Court is affirmed.

ALL CONCUR.

---

11. *Id.*

12. Annotation, *Construction of Oil or Gas Lease Covering More Than One Tract of Land by the Same Owner,* 11 A.L.R. 138 (1921). *See also H.B. Cameron v. Lebow,* Ky., 338 S.W.2d 399, 404 (1960) "It is well recognized that initial production on any part of the land leased constitutes compliance with the requirement that wells be drilled within a specified time, and such performance extends to all parts of the leasehold" (citing *Cadillac Oil & Gas Co. v. Harrison,* 196 Ky. 290, 244 S.W. 669 (1922)).