## Kennedy, et al. v. Hicks, et al.

(Decided May 14, 1918.)

### Appeal from Hardin Circuit Court.

1. Mines and Minerals—Minerals as Real Property or Chattels.— Before severance, minerals are real property; after severance, they are chattels.

2. Mines and Minerals—Construction of Contract.—An instrument, denominated a lease, granting, for a consideration payable before severance of the minerals, the right, for a period of ninety-nine years, to "quarry, mine, or drill for minerals and oils," is not a rental contract but a conveyance of real property.

3. Venue—Process—Place of Service.—An action to enforce a lien for unpaid purchase money, reserved in deed conveying minerals, is local to county where the land lies; and a necessary party to that action served with summons, issued therein, in another county in this State, was properly in court.

4. Liens—Maturity.—A lien for unpaid purchase money, reserved in deed for minerals and made payable when grantee saw fit to begin work to remove stone, became due and enforcible when grantee or his assignee began quarrying and removing stone from the land.

WILLIAM McKEE DUNCAN and G. K. HOLBERT for appellants.

H. L. JAMES for appellees.

Opinion of the Court by Judge Clarke—Affirming.

In 1903, appellees, Joe Hicks and wife, who were plaintiffs below, executed, acknowledged and delivered to defendant, Will C. Kennedy, the following instrument, the description of the land omitted:

"This lease was made this 20th day of October, 1903, by and between Joe Hicks and Rosie Hicks, his wife, of Hardin county, Kentucky, parties of the first part, and Will C. Kennedy of the county of Jefferson and State of Kentucky, party of the second part, witnesseth:

"That the parties of the first part in consideration of the stipulations and covenants thereinafter contained on the part of the said party of the second part, to be kept and performed has leased, demised and let unto the party of the second part, his heirs, executors, administrators and assigns for the sole and only purpose of quarrying, drilling and digging for minerals and oils of any kind, the exclusive right to all that certain tract of land situated near Stephensburg in Hardin county, Kentucky, and bounded and described as follows:

(Two tracts containing one hundred and twenty-five and three acres respectively.)

"Said second party to have and to hold said premises for said purposes only for the term of 99 years from this date. In the consideration of said lease, the said second party hereby pays to the first party the sum of $200.00 cash in hand, the receipt is here acknowledged, and agrees and binds himself to pay said first party the further sum of $300.00 within six months after any party, company or corporation begins quarrying, mining or drilling for minerals, oils or other things in the neighborhood of said first party, said party of the first part to fully use and enjoy the said land for farming purposes except such part as shall be necessary for the purpose of drilling, quarrying, etc., and a right-of-way to and from place or places of operation. Said second party shall have the right to move or place all necessary buildings and machinery and to lay tracks on said land to assist in moving stones, etc. The unpaid $300 is payable at any time second party sees fit to begin work on said land to remove stone and said second party is to have the right to remove all machinery, buildings, etc., placed on said land by said second party.

"Given under our hands the day and date above written."

In 1907, Hicks and wife conveyed the same land, without reservation of any kind, by general warranty deed, to W. H. Oliver and others. April 13, 1913, Kennedy assigned whatever rights he had under the above contract to the Stephensburg Stone Company, and it began to quarry stone on the land.

Thereafter, Hicks and wife filed this action in the Hardin circuit court against Kennedy and the Stephensburg Stone Company seeking a personal judgment against Kennedy for the unpaid $300.00 mentioned in the contract, and that they be adjudged a lien upon the mineral rights in the land sold to Hicks and assigned by him to the Stone Company, and that same be sold to satisfy their claim.

Kennedy, a resident of Jefferson county, was served with summons in that county and, before answering, made and saved the question of the court's jurisdiction of his person; and his first insistence here is that the court erred in ruling adversely to him on that question, a decision of which disposes of all questions, save one, raised by both defendants, because all, with the single exception, depend upon whether the written instrument executed by Hicks to Kennedy was simply a rental contract, as insisted by defendants, or a conveyance of real property as maintained by plaintiffs and held by the court.

We can not refrain from stating here that upon this interesting question counsel for appellants in their brief have presented neither argument nor authority, other than their own assertion; and counsel for appellees have not favored us with any brief, which places upon the court, if the question is to be discussed in the opinion in a manner justifying its recognition hereafter as authoritative precedent, a burden of research that ought to be borne or attempted at least by counsel.

That the question is an interesting one and not free from difficulty may be illustrated, and the question clarified somewhat at the same time, by the following quotation from the opinion of the United States Circuit Court of Appeals in the case of Halla v. Rogers, 100 C. C. A. 263, also reported in 34 L. R. A. (N. S.) 120:

"In an endeavor to ascertain what property, if any, is conveyed, and what rights, if any, are granted, by an instrument, whether it be called a lease or something else, affecting mining claims or minerals, some impor-

tant distinctions must be observed. Minerals are land (United States v. Castillero, 2 Black 17, 17 L. ed. 360) so long as they are undisturbed, and must be conveyed with the same formalities as other lands are conveyed. The owner of both the minerals and the other land may convey the minerals, in which case the corpus—the corporeal hereditament—passes. Thereby a severance is effected, the vendor remaining the owner of that part of the land which does not consist of minerals, and the vendee owning the land which consists of minerals. The owner may, on the other hand, convey the minerals upon condition that the vendee extract them by a specific time, or in a stipulated mode, or that title shall pass only when certain royalties be paid; in these instances there is no present consummated sale.''

The view above expressed that the owner may convey the minerals upon condition that the vendee extract them by a specified time, in which case there is no present consummated sale, is hardly accurate, but it is true that the owner may convey minerals upon condition that the vendee extract them by a specified time in such a manner that there is no present consummated sale or in such a manner that there is a present consummated sale, depending upon whether the title to the minerals vests in the vendee before or after separation; and so royalties usually, if not always, become due and are a lien upon the minerals after separation, and consequently as chattels; whereas, if, under the conveyance, the title vests with a lien reserved for unpaid purchase money payable before separation, then the lien attaches to the minerals as real estate. Therefore, an action to enforce a lien for royalties upon minerals after separation is transitory (Central Ky. Natural Gas Co. v. Stevens, 134 Ky. 306), but if the conveyance vests the title to the minerals in the vendee and retains a lien for unpaid purchase money, due and payable before the severance, then the action to enforce that lien by sale of the minerals while a part of the land would manifestly be local to the county where the land is located, under section 62, Civil Code, which requires an action to sell, recover, or subject real property to be brought in that county. Bramlett v. Couch, 105 S. W. 460.

Whether a lease such as the instant one ''is merely a lease of the land with the privilege of removing the

minerals during a certain period, or is in reality a sale of the land, is a question which is determined by the facts of each individual case and the laws of the particular jurisdiction.'' 18 R. C. L. 1186. See also 27 Cyc. 690; Kincaid v. McGowan, 88 Ky. 91; note to 18 L. R. A. 492; 26 L. R. A. (N. S.) 614; 9 Ann. Cases 524; 140 A. S. R. 9.

A lease, almost identical in its terms of conveyance, was held by the Pennsylvania Supreme Court in Barnsdall v. Bradford Gas Co., 225 Pa. 338, 74 Atl. 207; 26 L. R. A. (N. S.) 614, to pass the title to the minerals as real estate, a corporeal hereditament. In that case the term was but ten years, and the consideration was a royalty. In the lease before us, the term is ninety-nine years, and the consideration was not dependent upon the quantity of minerals produced, or whether, in fact, any were ever severed; and while the length of term is probably immaterial, the manner of payment for the minerals in the lease involved here is such as to fix its character as a conveyance of real estate, much more certainly than the manner of payment in the lease in the Barnsdall case.

And this suggests, it seems to us, one factor of controlling weight, viz.: the manner of payment of the consideration, in the construction of a mining contract for a term of years. Whenever the contract employs the language and observes the formalities required for a conveyance of realty, and the consideration is paid or made payable before severance, as here, the contract is a sale of real property; but, when the consideration is not payable until after severance, the contract may be a sale or an agreement to sell realty or personalty, dependent upon the language employed.

In this lease, the language employed is sufficient and purports to convey title to real estate, all of the formalities of execution and recordation were observed, a part of the consideration was paid in cash, the balance payable upon the happening of a contingency other than the removal of the minerals and regardless of whether the minerals were ever removed, and there are no provisions for further payments of any kind either as rent or royalties.

We therefore think it is clear the instrument conveyed to Kennedy the minerals as land; and it follows

that this is an action to subject real property to a lien retained in the deed of conveyance for unpaid purchase money, and therefore not transitory but local to Hardin county, where the land is located; that there was no misjoinder; that Kennedy was a necessary party and was properly in court; that the conveyance to Kennedy being of record, the conveyance to Oliver, et al., conveyed to them only what Hicks then owned, which they understood, as is proven by the so-called waiver they executed to Kennedy; and that the Stephensburg Stone Company purchased the minerals from Kennedy, subject to the unpaid purchase money lien due Hicks.

The only other question is whether the $300.00 matured when the Stone Company began quarrying rock, appellants contending that the lease covered only minerals and oil; that stone was neither; and that, therefore, the condition providing for the payment of the $300.00 had not arisen. The contract reads: "The unpaid $300.00 is payable at any time second party sees fit to begin work on said land to remove stone." That the Stone Company, under its purchase from Kennedy, was quarrying and removing rock from the land is admitted, and whether the lease gave them that right or not, a question not here, it certainly provides for the payment of the $300.00 upon that contingency.

Judgment affirmed.