## Duncan et al. v. Mason et al.

(Decided June 12, 1931.)

SELDON Y. TRIMBLE for appellants.

COLEMAN TAYLOR for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The appellants, whom we shall refer to as "the Duncans," sought to secure a judgment declaring that appellees and their predecessors in title had by bandonment and nonuser lost all rights under two certain instruments; they were unsuccessful, and have appealed.

On the 3rd day of June, 1894, D. D. Duncan and Fannie R. Duncan, his wife, of Logan county, Ky., of the first part, for and in consideration of $10,000, sold and conveyed to the Logan County Asphalt Company, of the second part, the mineral rights on all the land on the waters of Muddy river, which the first party received by devise from W. T. Duncan, deceased.

In this instrument it was agreed that as a further consideration the Logan County Asphalt Company should pay to the Duncans 2½ cents on each ton of asphalt mined on this land after 50,000 tons had been taken therefrom. All asphalt taken out after March 9, 1894, was to be counted as a part of this 50,000 tons. This instrument was on June 30, 1894, recorded by Logan county clerk in Deed Book 72, p. 441. The description was indefinite, the land was surveyed, and on January 27, 1896, a second instrument, between these

same parties containing a correct description, was executed, and on October 31, 1896, was recorded by clerk of Logan county court in Deed Book 74, p. 635. Operations were begun and were diligently prosecuted for a few years, then work ceased, and for more than 20 years nothing has been done. These two papers relate to but one transaction, they are but evidences of a single contract and we shall hereafter refer to them as one. By mesne conveyances the rights under this contract have come to, and are now claimed by R. S. Mason and Pioneer Rock Asphalt Company. On May 2, 1910, D. D. Duncan, died, and devised his property to his descendants. All of these descendants, except one Willie E. Duncan, who is made a defendant, have joined as plaintiffs in this suit in equity against R. S. Mason and the Pioneer Rock Asphalt Company, have alleged with elaboration all of the above; that more than 50,000 tons of asphalt have been taken out under this contract; and insist that all rights under this contract have been lost by abandonment and nonuser. By amendment plaintiffs alleged that the ''Kreuger Interests'' (a Kentucky corporation) was claiming some rights in the premises, and made it a party.

Defendants by answer traversed the petition, and by an amended answer alleged that on January 13, 1899, J. M. McCutchen, trustee, filed an action in the Logan circuit court against the Standard Asphalt Company, it being one of the predecessors in title to the present defendants, in which action D. D. Duncan, under whom the plaintiffs claim, filed a petition to be made a party, and was made a defendant, and his petition was ordered taken as his answer and cross-petition against the Standard Asphalt Company; that in that suit the contract in question was adjudged to be a deed and not a lease; that no appeal was ever prosecuted from that judgment; that it has never been vacated or set aside, and is in full force and effect, and the defendants set out a copy of that judgment and plead same in bar of this action.

Plaintiffs in reply to this denied that the court, in that suit, had adjudged that the contract in question was not a lease or was a deed, or that the rights of the parties were fixed thereby further than this which is copied from that judgment:

''In order that the purchaser at the sale herein ordered may know the extent of his rights and the limitations on them it is the opinion of the court and

it is adjudged that under the deed from D. D. Duncan to the Standard Asphalt Company said Company acquired no right to cut any timber on said land except:

"1st. such as may be necessary to make cross-ties sufficient for the original construction of the railroad therein mentioned, and that all ties cut and not used by said Company are to be counted the same as if used;

"2nd. and except such timber as may be required for the original construction of such houses and structures as may be necessary in the development of the asphalt mines:

"3rd. it has no right to cut any timber for fuel, or for repairs, or to clear any land for cultivation, or to cultivate any of it.

"4th. The company acquired no right to cut any timber which it does not in good faith intend to use for the purposes specified in this judgment, and all timber cut, without intent to be used remains the property of said Duncan.

"5th. The Company has no right to sell any timber off said land, nor to let to any tenant any part of it, or of any houses erected on it, except to its employees.

"6th. In getting cross ties and other timber for purposes herein specified as allowed, the part of trees not used or fit to be used for such purposes belong to said Duncan.

"7th. Said Duncan has a lien on the property conveyed by said deed for his royalty on asphalt taken out in excess of 50,000 tons, and in estimating the amount that which has already been taken out since the 9th day of March, 1894, it all is taken into the amount.''

No one has seen fit to set out just what the issues were in the old case of McCutchen, Trustee, v. Standard Asphalt Co. et al., and all we know about that case is what we learn from the judgment rendered therein, of which we have copied above all that has any reference to the contract in question. This judgment does not show that the nature of the estate conveyed to the Logan County Asphalt Company was then in issue, and in the absence of a transcript of the record in that case, we cannot presume that it was, so the question is now before us for decision just as fully as it would have been if the

McCutchen suit had never been filed. This contract is a complete instrument, given for a valuable consideration, and no suggestion could be made that it did not at once sever and separate, from the remainder of the estate D. D. Duncan then had in the property described in this contract, and vest in the Logan County Asphalt Company, the title to the mineral rights, including the right to go upon any parts of said property and dig to any depth for the purpose of mining and quarrying stone therefrom and certain building rights, railroad rights, and timber rights set out in the contract, were it not for these words:

> "It is further agreed that second party, as a further consideration for this deed, shall pay to the parties of the first part 2½ cents on each ton of asphalt mined on said land after fifty thousand tons have been taken therefrom; and all the asphalt taken out since the 9th day of March, 1894 shall be counted as part of said fifty thousand tons."

These litigants are unable to agree whether this contract is a deed or a lease. That is to be determined, not by what these parties called this contract (both of the instruments evidencing this contract are denominated therein as deeds), but by what the contract did. Kentucky Rock Asphalt Co. v. Milliner, 234 Ky. 217, 27 S. W. (2d) 937.

If the effect of an instrument is to sever the estate and to vest the title to a certain part of the estate in another, it is a deed, no matter what the parties may call it.

In Kennedy v. Hicks, 180 Ky. 562, 203 S. W. 318, an instrument was held to effect a severance, although it was denominated "a lease," and was to run for a period of 99 years only. What the instrument accomplishes, and therefore what it is, must be determined by the facts of each individual case and the laws of the particular jurisdiction. See authorities cited in Kennedy v. Hicks, supra. This brings us almost, if not entirely, to the old question of the "corporeal rule" and the "incorporeal rule." See discussion and authorities in Trimble v. Ky. River Coal Corp., 235 Ky. 301, 31 S. W. (2d) 367.

We regard the case of Adams v. Elkhorn Coal Corporation, 199 Ky. 612, 251 S. W. 654, as directly applicable and controlling. In harmony with this opinion is

that in Kentucky Block Cannel Coal Co. v. Sewell (C. C. A.) 249 F. 840, 1 A. L. R. 557.

The Duncans have cited several of our decisions that they regard as controlling, and we shall discuss some of them.

Eastern Ky. M. & T. Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S. W. 438, 46 L. R. A. (N. S.) 672, we do not so regard, because in that case the cash consideration paid was only $1, and the real consideration was one-eighth of the net profits of all mineral and timber taken from the tract. That was the only substantial consideration the grantors got in that case. In this case there was a substantial consideration ($10,000) paid, and the Duncans are entitled to a royalty on only one of the substances the appellees may take from this property, and the appellees own and have the right to take any minerals therefrom that they may see fit to take. All the minerals are theirs; the royalty attaches to the asphalt only.

What we have just said applies to the other cases cited by them, to wit: Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662; Soaper v. King, 167 Ky. 121, 180 S. W. 46; and United Mining Co. v. Morton, 174 Ky. 366, 192 S. W. 79.

The consideration for the Mann lease, involved in the last case, is not stated in the opinion, but we have examined that lease, and it was: $200 for each commercial gas well; one-eighth of all petroleum; 25 cents per ton for fluorspar; and 5 per cent. of all other minerals.

Another case in this same class where we held no severance resulted is our case of Williamson v. Williamson, 223 Ky. 589, 4 S. W. (2d) 392, in which case we find from an examination of the lease, the consideration therefor was 16 cents per ton of coal mined. The general rule is thus stated in 40 C. J. p. 993, sec. 586:

> "Although the instrument purports to be a lease, where it is apparent from the language and terms thereof that it was the intention of the parties to effect a sale of the mining property, it does not create a lease but is a sale or conveyance of the minerals in place, or a sale of the mineral products; notwithstanding it provides for the removal and payment for a certain amount of mineral each year, and notwithstanding, the grantor reserves a certain interest in the minerals."

We find this in 40 C. J., p. 972:

"Where the words "grant, bargain, and sell" are used in connection with minerals in place and words of inheritance are added, it is presumed, unless a contrary intent clearly and affirmatively appears, that the parties intended them to have their ordinary legal effect, which is to vest in the grantee the entire ownership of the minerals mentioned in the land described."

Both the instruments that evidence this contract measure up fully to the above. This contract severed the mineral estate from the remainder of the tract, and vested the title thereto in the Logan County Asphalt Company.

"Except in the case of a perfect legal title to a corporeal hereditament, every right or interest in, title to, or ownership of property may be lost by abandonment." United States Mining Co. v. Morton 174 Ky. 366, 192 S. W. 79, 83.

"A perfect legal title to real property cannot be lost by abandonment." 1 C. J. p. 10, sec. 14.

In the case of Cox v. Colossal Cavern Co., 210 Ky. 612, 276 S. W. 540, 544, we said:

"Counsel for plaintiff endeavor to apply the equitable doctrine of laches or abandonment. Such doctrines could only apply to easements or licenses, and have no application to actual estates in the land itself, which can only be lost or barred by the operation of the statutes of limitation."

The trial court quieted the title of the appellees, and in its judgment said:

"It is further adjudged by the court that the instruments aforesaid, constitute a deed and that the said Pioneer Rock Asphalt Company and its successors shall pay to the heirs of D. D. Duncan, or their assigns, the 2½ cents per ton royalty upon all the asphalt taken from said property as provided by the terms of said contract, and in this connection it is adjudged that there has been produced from said property not exceeding fifty thousand tons of

asphalt, and the said Company shall pay said royalty upon all asphalt hereafter taken from said property.''

The judgment is affirmed.