## Head et al. v. Little et al.

January 17, 1950.

R. L. Maddox, Judge.

J. Marshall McCann, John G. Atchison, Cornett & Dixon for appellants.

Hiram Owens, Brown & Bird, S. V. Little for appellees.

CHIEF JUSTICE SIMS—Affirming.

The question for determination in this declaratory judgment action is whether the appellees as lessees of a coal lease executed to them by appellants are liable for the ad valorem taxes assessed against the minerals under the lands leased. The chancellor decided that

under the terms of the instrument the lessors were liable for these taxes and this appeal followed.

The case was submitted on the contract and a stipulation of facts. On Oct. 28, 1946, appellants leased to appellees for a term of 30 years, with the option to extend for an additional 10 years, 27,000 acres of land in Leslie County "for the sole purpose of exploring for, mining, taking out and removing therefrom the coal which may hereafter be found, on, in or under the said land." It fixed a minimum royalty of $1200 for the first year and increased it annually until it reached $2500 for the fifth and all succeeding years. In addition to this minimum royalty, the contract provides that lessees are to pay lessors a royalty of 10c per ton for all coal actually mined. It is further provided in the lease contract that should lessees default for more than 60 days in the payment of the royalties, or should they fail to perform any of the covenants or conditions of the lease, lessors have the option to reenter the leased premises.

It was stipulated that prior to executing this lease the lessors had contracted the timber to Floyd Fitch and had leased the oil and gas to the Sun Oil Company; that prior to 1948, the minerals had been listed for taxation as a unit at $10 per acre and subsequent to that date the Tax Commissioner, without notice to appellants or appellees, separated the property and assessed the value of the land at $26,607; the value of land and improvements at $26,607; and the value of the mineral and timber rights at $74,070.

Both appellants and appellees agree that the minerals may be severed from the land and become a separate taxable estate. Commonwealth v. Garrett, 202 Ky. 548, 260 S. W. 379; Kennedy v. Hicks, 180 Ky. 562, 203 S. W. 318; Stepp v. Pike County Board of Sup'rs, 194 Ky. 176, 238 S. W. 408. The Stepp opinion points out that where there is a severance of the minerals, both the lessors and the lessees have a taxable interest therein. In the instant case lessees admit their lease upon this land is taxable, and the eighth paragraph of the stipulation recites they are assessed $28,790 as the value of this mining lease and the improvements thereon.

The fact that the coal was separated from the land by the lease and became a separate taxable estate, does not solve our question, which is whether the title to the coal vested in lessees before or after it was mined. If the title to the coal was actually conveyed to the lessees by the contract, then they are liable for the ad valorem tax assessed against the coal in place, while if the contract merely gives lessees the right to mine the coal, the title to it does not vest in them until after the coal is mined or removed from the ground, and appellees are not liable for the tax.

Here, the instrument contains no language sufficient to convey title to the coal, nor does it purport to do so, but it does contain the usual language and terms of a coal lease. True, it is for a long term of years but the right given is that of "exploring for, mining, taking out and removing * * * coal." A royalty is retained of 10c a ton for all merchantable coal mined and removed. In the event the royalty is in default for more than 60 days, and in the event lessees fail to perform any of the covenants of the writing, the lessors have the right of re-entering the premises without notice to the lessees. This language clearly shows there was no conveyance of the coal to lessees but that they were only given the right to mine same on the payment of a 10c royalty. The only interpretation which can be given this instrument is that it is a lease of the coal and not a conveyance thereof. The language employed in this contract is not sufficient to convey title to the coal, nor does it purport to so do. The instrument has none of the earmarks of a conveyance but has all the earmarks of a lease. The only interpretation which can be given the contract is that it is the lease of the coal and not a conveyance thereof in place. Kennedy v. Hicks, 180 Ky. 562, 203 S. W. 318; Terrill v. Kentucky Block Cannel Coal Co., 290 Ky. 35, 160 S. W. 2d 326.

The seventh paragraph of the instrument contains this provision relative to taxes:

"7. In addition to the royalties hereinbefore provided to be paid, the Lessees further covenant and agree to bear, pay and discharge all taxes, assignments, rents charges for revenues, imposts and all levies general and special, ordinary and extra-ordinary of any name, nature and kind whatsoever which may be fixed, charged,

levied or otherwise imposed on any coal that may be produced on the leased premises affected hereby as well as on any and all mining equipment or improvements which are placed on said leased premises by the Lessees, used in the operation of mining and removing coal from said leased premises, but the said Lessees shall not be required to pay income taxes or any inheritance or succession taxes which may at any time during the term of this lease be required to be paid on any gift, devise, deed, mortgage, descent or other alienation of any part of or all of said leased premises, said Lessors agreeing to pay all taxes on the leased premises except those taxes which the Lessees have hereinabove agreed to pay and the Lessees agree to exhibit or deliver to Lessors, as often as requested so to do, the receipts showing the payment of the aforesaid taxes, rents, assignments, charges, imposts and levies.''

It seems clear to the court that the taxes the above paragraph of the lease requires lessees to pay is that assessed against the coal after it is mined, as well as the taxes assessed against appellees' mining equipment and the improvements they placed on the land. Certainly, the language in this seventh paragraph does not impose upon appellees the burden of paying the tax on the coal in place, which under the terms of the contract does not become lessees' property until they mine it.

We have reached the same conclusion at which the chancellor arrived, therefore his judgment is affirmed.