**KENTUCKY RETIREMENT SYSTEMS, Appellant,**

v.

**Debra FRYREAR, Appellee.**

No. 2008–CA–001300–MR.

Court of Appeals of Kentucky.

Sept. 11, 2009.

As Corrected Dec. 4, 2009.

Discretionary Review Denied by Supreme Court Aug. 18, 2010.

Katherine Rupinen, Frankfort, KY, for appellant.

Jonathan G. Hieneman, Campbellsville, KY, for appellee.

Before CLAYTON and TAYLOR, Judges; KNOPF,[1] Senior Judge.

## OPINION

TAYLOR, Judge.

Kentucky Retirement Systems (Retirement Systems) brings this appeal from a June 11, 2008, Opinion and Order of the Franklin Circuit Court reversing a final order of the Board of Trustees of the Kentucky Retirement Systems (Board of Trustees) which voided the retirement benefits of Debra Fryrear. This appeal involves the circuit court's application of the doctrine of equitable estoppel to pre-

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

vent the Retirement Systems from utilizing Kentucky Revised Statutes (KRS) 61.637 to void Fryrear's retirement benefits. We affirm.

Fryrear was employed by the Campbellsville Independent School District (District) for some twenty-five years. During her employment with the District, Fryrear supplemented her income through temporary employment with the Taylor Circuit Clerk's Office (Clerk's Office). In June 2005, Fryrear was offered a full-time position as a deputy clerk with the Clerk's Office. Fryrear decided she would retire from the District and would accept the position with the Clerk's Office. As Fryrear was unfamiliar with the technicalities surrounding retirement from her position with the District and acceptance of a position with the Clerk's Office, she turned to the Retirement Systems for assistance. The Retirement Systems is statutorily charged with administering both the Kentucky Employees Retirement System (KERS) and the County Employees Retirement System (CERS).[2]

At the Retirement Systems' office in Frankfort on June 21, 2005, Fryrear met with a Retirement Systems' benefits counselor, Jennifer Devine. At their meeting, Fryrear was clearly confused concerning her membership in either KERS or CERS as an employee of the District and concerning her future membership in either KERS or CERS as an employee of the Clerk's Office. Fryrear was also admittedly confused as to the relationship between the Clerk's Office and the Administrative Office of the Courts (AOC); Fryrear even related to Counselor Devine

the erroneous belief that the Clerk's Office was "part of" AOC.

As for Counselor Devine's understanding of these issues, we only have Fryrear's testimony as Devine was no longer employed by the Retirement Systems at the time of the administrative hearing and did not testify. In any event, Fryrear stated that Counselor Devine affirmatively represented to Fryrear that through her employment with the District she was a member of CERS and that through her new employment with the Clerk's Office she would become a member of KERS. As Fryrear believed she was moving from membership in CERS as an employee of the District to membership in KERS with her new position in the Clerk's Office, Fryrear completed the appropriate documentation and retired from her employment with the District on June 30, 2005. Upon Fryrear's retirement with the District, she immediately began receiving retirement benefits from CERS. On July 11, 2005, Fryrear began full-time employment as a deputy clerk with the Clerk's Office.

Subsequently, by letter dated September 23, 2005, the Retirement Systems informed Fryrear that her retirement benefits were "voided" for violation of KRS 61.637(10).[3] Specifically, the Retirement Systems advised:

Your retirement account has been voided in accordance with Kentucky Revised Statutes 61.637(10) due to your reemployment. "If a member is receiving a retirement allowance, and is employed within one (1) month of the member's initial retirement date in a position that is required

2. Pursuant to KRS 61.645, the Board of Trustees of the Kentucky Retirement Systems is statutorily obligated to administer the Kentucky Employees Retirement Systems (KERS), the County Employees Retirement Systems (CERS), and the State Police Retirement System.

3. KRS 61.637 was amended effective June 27, 2008. Relevant to this appeal is the version of KRS 61.637 in effect in 2005. Thus, this opinion will reference the prior version of KRS 61.637.

to participate in the same retirement system from which the member retired, the member's retirement shall be voided and the member shall repay to the retirement system all benefits received." Our records indicate you were terminated from Campbellsville Independent Schools (CERS) on June 30, 2005 and you were hired with Taylor County Circuit Clerk's (CERS) with a start date of July 11, 2005.

. . . .

We have stopped the electronic transfer of funds for your October 2005 benefit. A check in the amount of $3,320.33, which represents the net amounts you received for July, August and September 2005, is due upon receipt of this letter. Please make check payable to the Kentucky State Treasurer and mail it to us in the enclosed envelope.

According to the letter, Fryrear's retirement benefits were "voided" because she began employment with the Clerk's Office (which actually participated with CERS) within one month of retiring from the District (which also participated with CERS) in violation of KRS 61.637(10). Under KRS 61.637(10), a member receiving retirement benefits from CERS must wait at least one month before starting employment with an employer who also participates in CERS.[4] As Fryrear only waited some eleven days after retiring from the District (which participated with CERS) to begin employment with the Clerk's Office (which also participated with CERS), the Retirement Systems voided her retirement benefits under KRS 61.637(10).

Following receipt of the letter, Fryrear requested a hearing before the Board of Trustees to challenge the voiding of her retirement benefits. The matter initially went before a hearing officer. At the evi-

dentiary hearing, Fryrear pointed out that on June 21, 2005, she met with Counselor Devine concerning her retirement from the District. Fryrear testified that "she was misled by the Retirement Systems' [C]ounselor [Devine], who had advised . . . that, following her retirement, she could immediately move to employment with the Taylor Circuit Clerk's Office with no adverse affects on her retirement." Fryrear stated she would have waited one month after retiring from the District before beginning her new position with the Clerk's Office if she had been informed that both employers participated in the same retirement system (CERS). As previously pointed out, Counselor Devine was not employed by the Retirement Systems at the time of the hearing and did not testify.

Following the hearing, the hearing officer rendered a report and recommended order on June 22, 2006. Therein, the hearing officer concluded that the Retirement Systems properly voided Fryrear's benefits. Also, the officer noted:

The claim of equitable estoppel has been preserved by [Fryrear]. However, based on this record, it does not appear that an exception to the limited application of equitable estoppel against public agencies could be overcome.

Thereafter, on August 21, 2006, the Board of Trustees rendered a final order which wholly adopted the hearing officer's recommended order voiding Fryrear's retirement benefits.

Fryrear subsequently filed a petition for judicial review of the Board of Trustees' final order in the Franklin Circuit Court. KRS 18A.100. In a June 11, 2008, opinion and order, the circuit court reversed the Board of Trustees' final order that voided

---

4. Although irrelevant herein, KRS 61.637(10) also requires a member, who is receiving retirement benefits from KERS, to wait one month before starting employment with an employer who also participates in KERS.

Fryrear's retirement benefits. In so doing, the circuit court relied upon the doctrine of equitable estoppel to prevent the Retirement Systems from voiding Fryrear's benefits. Being dissatisfied with the circuit court's decision, the Retirement Systems brings this appeal.

The Retirement Systems contends that the circuit court erroneously reversed the Board of Trustees' final order that voided Fryrear's retirement benefits. In particular, the Retirement Systems claims that the circuit court's application of equitable estoppel against the Retirement Systems was improper. We disagree.

■ Judicial review of an administrative agency's decision is concerned with arbitrariness. *Vance v. Ky. Office of Ins.*, 240 S.W.3d 675 (Ky.App.2007). Arbitrariness has many facets; among such facets are whether the administrative agency's decision is supported by a sufficient quantum of evidence and whether the agency correctly applied the law. *Baesler v. Lexington–Fayette Urban County Gov't*, 237 S.W.3d 209 (Ky.App.2007); *Competitive Auto Ramp Servs., Inc. v. Ky. Unemployment Ins. Comm'n*, 222 S.W.3d 249 (Ky. App.2007).

■ Resolution of this appeal revolves around application of the doctrine of equitable estoppel. In this Commonwealth, it has been recognized that equitable estoppel is generally applicable where a party relies in good faith and to his detriment upon representations of another party. *Rice v. Rice*, 243 Ky. 837, 50 S.W.2d 26 (Ky.1932). Recently, our Supreme Court outlined the elements necessary to prove a claim of equitable estoppel:

The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Weiand v. Bd. of Trs. of Ky. Ret. Sys.*, 25 S.W.3d 88, 91 (Ky.2000) (quoting *Elec. and Water Plant Bd. of City of Frankfort v. Suburban Acres Dev., Inc.*, 513 S.W.2d 489, 491 (Ky.1974)). Also, equitable estoppel may only be invoked against a governmental entity "in unique circumstances where the court finds exceptional and extraordinary equities involved." *Weiand*, 25 S.W.3d at 91. Regardless of whether the prospective estopped party is a governmental entity or a private citizen, "[w]hat must not be overlooked ... is that estoppel is a doctrine of equity, to be invoked when equity demands it." *Smith v. Ash*, 448 S.W.2d 51, 53 (Ky.1969).

In the case *sub judice,* the Board of Trustees erroneously believed that it lacked the authority to pass upon a claim of equitable estoppel.[5] *See Bd. of Trs., Ky.*

---

**5.** Upon this issue, the Board of Trustees of the Kentucky Retirement Systems specifically held:

*Ret. Sys. v. Grant,* 257 S.W.3d 591 (Ky.App.2008)(holding that the *Board of Trustees* was authorized and required to determine a claim of equitable estoppel). Even though it perceived a lack of such authority, the Board of Trustees, nevertheless, engaged in an analysis of Fryrear's equitable estoppel claim and ultimately determined that her claim was without merit. Having reviewed the final order, we think the Board of Trustees' consideration of the claim essentially fulfilled its responsibility as an administrative agency to determine issues of fact and to pass upon the merits of equitable estoppel. *See Grant,* 257 S.W.3d 591. Our review proceeds accordingly.

■■■ In the final order, the Board of Trustees concluded that Fryrear was not entitled to relief under the doctrine of equitable estoppel. The Board's conclusion was premised primarily upon two alternative bases: (1) the evidence did not support a finding that Fryrear was "misled" by Counselor Devine; and (2) even if Fryrear were misled by Counselor Devine, it was the result of a mutual "misunderstanding." We address each basis separately.

At the administrative hearing, Fryrear was the sole witness to testify. It was Fryrear's uncontradicted testimony that Counselor Devine affirmatively represented to Fryrear that through her employ-

ment with the District she was a member of CERS and that through her new employment with the Clerk's Office she would become a member of KERS. Fryrear further testified that Counselor Devine advised Fryrear that she could "immediately move to employment with the Taylor Circuit Clerk's Office with no adverse affects on her retirement."

Apart from Fryrear's testimony, the only other evidence consisted of documents entered into the administrative record as exhibits by both parties. These exhibits, however, did not directly contradict Fryrear's testimony concerning the advice given by Counselor Devine at their June 21, 2005, meeting.[6] Considering the evidentiary record before us, it must be recognized that this is a unique case where the evidence compels a finding that Counselor Devine advised that Fryrear could "immediately move to employment with the Taylor Circuit Clerk's Office with no adverse effects on her retirement." *See Bourbon County Bd. of Adjustment v. Currans,* 873 S.W.2d 836 (Ky.App.1994). Thus, the Board of Trustees' finding that the evidence did not support a finding that Fryrear was misled by Counselor Devine was clearly erroneous. We now address the Board of Trustees' second basis for denying Fryrear relief under the doctrine of equitable estoppel—even if Fryrear were

The Hearing Officer will note that counsel for the [Retirement Systems] is correct that the theory of equitable estoppel is not something that can be ruled upon by an administrative hearing officer. It is a court issue.

6. We specifically point out Exhibit 14. Exhibit 14 consisted of "electronic folder comments" prepared by various employees of the Kentucky Retirement Systems. Of particular interest is a September 25, 2005, comment prepared by an employee of the Retirement Systems named "S. Miller." The comment reflected that Miller spoke with Counselor Devine regarding her June 21, 2005, meeting

with Fryrear. According to Miller's comment, Counselor Devine stated she could not "recall" anything specific about the meeting with Fryrear. Counselor Devine reflected that she would normally make a folder comment concerning a member's prospective reemployment after retirement. But, Counselor Devine also acknowledged that no such folder comment existed in Fryrear's case. Most importantly, Counselor Devine positively stated that she possessed no independent recollection of the meeting or of her conversation with Fryrear.

misled by Counselor Devine, it was the result of a "mutual misunderstanding."

Upon the second basis supporting its decision, the Board of Trustees specifically found that "[c]learly, this case was in a state of confusion during the meeting of June 21, 2005" that took place between Fryrear and Counselor Devine. In particular, the Board of Trustees was troubled by Fryrear's apparent quandary concerning whether the Court Clerk's Office was affiliated with the Administrative Office of the Courts: [7]

> While Ms. Fryrear contends that she was misled, it is clear from the testimony that she made reference to the Taylor Circuit Clerk's Office, and she also made reference to AOC. Furthermore, she even indicated on a form signed on June 30, 2005[sic] that the Taylor Circuit Clerk's Office was a state agency.

It is uncontroverted that Fryrear was admittedly confused as to whether the Clerk's Office was part of the AOC and/or a state agency. Moreover, it is clear that Fryrear possessed little independent knowledge concerning the myriad complexities surrounding entitlement to retirement benefits under either CERS or KERS. In fact, it is Fryrear's undisputed testimony that she was unsure whether she was a member of CERS or KERS as an employee of the District or as an employee of the Clerk's Office. And, while Fryrear was confused upon whether the Clerk's Office was part of AOC or some other state agency, she asserted very clearly that her new position was ultimately with the Clerk's Office.

Every year in this Commonwealth, state, county, and city employees retire as members of CERS and KERS. Because of the immense intricacies associated with both retirement systems, members must navigate an often abstruse and baffling course to obtain retirement benefits. To assist members with benefits and to manage the retirement funds of CERS and KERS, the General Assembly has provided for the Kentucky Retirement Systems. And, the General Assembly has specifically imposed particular "duties" upon employees of the Retirement Systems through enactment of KRS 61.650(1)(c):

> (1) (c) A trustee, officer, employee, or other fiduciary shall discharge duties with respect to the retirement system:
>
> 1. Solely in the interest of the members and beneficiaries;
>
> 2. For the exclusive purpose of providing benefits to members and beneficiaries and paying reasonable expenses of administering the system;
>
> 3. With the care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with those matters would use in the conduct of an activity of like character and purpose;
>
> 4. Impartially, taking into account any differing interests of members and beneficiaries;
>
> 5. Incurring any costs that are appropriate and reasonable; and
>
> 6. In accordance with a good-faith interpretation of the law governing the retirement system.

Of particular interest herein is KRS 61.650(1)(c)(3). It imposes upon every employee within the Retirement Systems the duty of utilizing the "care, skill, and caution" of a "prudent person" in like circumstances and acting in like capacity.

**7.** If the Taylor Circuit Clerk's Office were a state agency or under the Administrative Office of the Courts, the parties apparently agree that its employees would be covered by KERS and not CERS. Thus, the provisions of KRS 61.637 would be inapplicable, and Debra Fryrear's retirement benefits would not have been "voided."

According to the Board of Trustees in its final order, there existed a "mutual misunderstanding" and a "state of confusion" during the meeting between Fryrear and Counselor Devine. Although Fryrear reported to Counselor Devine that her new employment was with the Clerk's Office, Fryrear also erroneously told Counselor Devine that the Clerk's Office was a part of AOC. Counselor Devine allegedly opined that Fryrear's new employment with the Clerk's Office was under KERS and not CERS. As stated by the Board of Trustees, "the fact of the matter is that, if there was any misunderstanding or misrepresentation, it was a combined effort by both [Fryrear] and [Counselor Devine]."

The Board of Trustees, however, ignores KRS 61.650(1)(c)(3) and concomitantly disregards that Fryrear and Counselor Devine were not *in pari delicto*. Fryrear was a lay person and unfamiliar with the technicalities surrounding retirement benefits. Conversely, Counselor Devine was statutorily required to perform her duties with the care, skill, and caution of a prudent person acting in like capacity under similar circumstances and was held out as a professional counselor possessing the aptitude and knowledge necessary to navigate the statutory maze of entitlement to retirement benefits. The distinction is pivotal. While Fryrear was certainly confused upon whether the Clerk's Office was part of AOC and whether employees of the Clerk's Office participated in KERS or CERS, a prudent counselor employed by the Retirement Systems should have certainly possessed such knowledge.

Consequently, it was error for the Board of Trustees to reject Fryrear's claim of equitable estoppel. Rather, we conclude that Fryrear was entitled to the remedy of equitable estoppel as exceptional equities are certainly present and, thus, the Retirement Systems should be estopped from voiding Fryrear's retirement benefits. In so concluding, we adopt the circuit court's erudite analysis of equitable estoppel to the particular facts of this case:

It is clear to the Court that [Fryrear] has met all the necessary elements for equitable estoppel to apply. First, there was obviously a representation made by [the Retirement Systems] to [Fryrear] that she needed not wait a full month before accepting a position with the Taylor Circuit Clerk's Office. This is evidenced by the handout received by [Fryrear], which had an asterisk next to the paragraph noting that a retiree could immediately return to work for an agency that was a member of a different retirement system[.] Although [Counselor] Devine was unable to testify in the hearing, it is obvious from the facts that there was some confusion regarding the retirement system of which the Circuit Clerk's Office was a member[.] The record establishes that [Fryrear] sought out consultation with the Retirement Systems in order to receive some guidance in terms of new employment and that the Retirement Systems made a representation to her in this respect[.] Whether the Circuit Clerk's Office was a member of CERS or KERS was a material fact because that fact determined whether [Fryrear] was required to wait a month before returning to work[.]

Second, it is clear that the party to be estopped was aware of the facts. If anyone is in a position to know which system the Circuit Clerk's Office is a member of, it is the Retirement Systems. The fact that [Counselor] Devine was mistaken, and did not intentionally mislead [Fryrear], is immaterial because it is the responsibility of the Retirement Systems to administer retirement programs, and it must be held accountable when it errs. [Fryrear] sought out advice on her reemployment after retiring,

and [the Retirement Systems] is charged with providing accurate information to prospective retirees.

Next, the retirement systems membership of the Circuit Clerk's Office was unknown to [Fryrear]. This is at least part of the reason it was necessary for her to meet with [the Retirement Systems] for a retirement consultation.

In addition, the Retirement Systems acted with the intention that its representation would be relied upon. [The Retirement Systems] routinely offers retirement advice to prospective retirees, and thus is aware that the retirees usually have little knowledge of the organization of the Retirement Systems. Thus, when [the Retirement Systems] gives retirement advice, it can expect that the participant will act based on its assertions.

Finally, [Fryrear] in this action did in fact rely to her detriment on the information she received from [the Retirement Systems]. Had [Fryrear] been given the correct information, namely that the Taylor Circuit Clerk's Office was a CERS member, she could have waited the requisite one month before accepting employment there. However, [Fryrear] relied on statements from [Counselor] Devine and returned to work before the one month waiting period had expired. As a consequence, [Fryrear] not only lost her entire retirement, but she was actually billed for the retirement benefits that had been paid to her.

While the Court recognizes that [the Retirement Systems] did not intentionally deceive the [Fryrear], it is troubled by the consequences [Fryrear] has been forced to endure because of [the Retirement Systems] mistake. The Retirement Systems' makes much of the fact that [Fryrear] used the terms Circuit Clerk's Office and AOC interchangeably.

The Court cannot agree that this excuses the mistake, as it is the duty of [the Retirement Systems] to make sure that it gives retirees accurate information regarding their retirement, as this information is crucial to those retirees in planning for their future.

. . . .

Because all the elements of equitable estoppel have been met, the Court must estop the Kentucky Retirement Systems from voiding [Fryrear's] retirement benefits. . . .

In sum, we hold that the circuit court properly reversed the Board of Trustees' final order and correctly invoked the doctrine of equitable estoppel against the Retirement Systems to prevent it from voiding Fryrear's retirement benefits. We do so neither capriciously nor cavalierly. However, in light of the exceptional nature of the facts presented, equity demands that Fryrear be afforded judicial relief.

For the foregoing reasons, the Opinion and Order of the Franklin Circuit Court is affirmed.

ALL CONCUR.